LINDSAY, Judge.
This case is before this court on remand from the Louisiana Supreme Court. The Louisiana Patient Compensation Fund (the Fund) originally applied to this court for supervisory writs seeking review of a trial court decision denying the Fund the right *1375 to trial by jury and the right to litigate the issue of liability of certain health care providers. This court ruled in favor of the Fund, granted the writ and made it peremptory, recognizing the Fund’s right to jury trial and the right to litigate the liability of the health care providers. Upon a writ application to the Louisiana Supreme Court, this court’s opinion, 532 So.2d 1204 (La.App. 2d Cir.1988), was set aside and the case was remanded for briefing, argument and opinion. Stuka v. Fleming, 536 So.2d 1206 (La.1989). Having again reviewed the record, the briefs and argument of counsel, for the following reasons, we adhere to our original opinion and reverse the trial court judgment.
FACTS
This is a medical malpractice case.[1] The plaintiffs are Wally Eugene Stuka and Lorna Marie Larrieu Stuka. The defendants include the following qualified health care providers, Dr. Michael O. Fleming, Dr. Ricky L. Jones, Dr. Marion Cash and the medical corporation employing the three doctors, Michael O. Fleming and Ricky L. Jones (a Medical Corporation).
Loma Stuka was diagnosed as pregnant in mid-August, 1985. On November 6, 1985 she consulted Dr. Fleming with sinus problems. She continued to have severe headaches and nausea during the course of her pregnancy. These headaches were treated with Tylenol, Keflex and. Demerol. From November, 1985, to March, 1986 the plaintiff consulted with Dr. Fleming, or one of his partners, Dr. Jones or Dr. Cash, on numerous occasions regarding her headaches.
On March 13, 1986, the plaintiff saw Dr. Jones with severe nausea, vomiting and headaches. By March 18, 1986, the plaintiff was constantly throwing up and was given Demerol by Dr. Jones.
Mrs. Stuka’s condition continued to deteriorate until March 21, 1986 when she was admitted to the hospital. At that time, she was found to have a brain abscess in the right frontal lobe, caused by a sinus infection. The plaintiff underwent a right front temporal craniotomy which left her subject to seizures and some brain damage. Her baby was delivered by emergency cesarean section on March 30, 1986.
The plaintiffs claimed medical malpractice in failing to properly treat Mrs. Stuka’s sinus infection and avoiding the brain abscess. A medical review panel was formed to consider the claim.
The plaintiffs filed suit on February 20, 1987. Originally, the plaintiffs filed suit against only Drs. Fleming, Jones and Cash. At some point after the suit was filed the parties apparently entered into settlement negotiations and arrived at an agreement. On August 10,1988, pursuant to the procedures set forth in the Medical Malpractice Act, the plaintiffs filed an amended petition, seeking judicial approval of their settlement agreement. In this amended petition seeking settlement approval, in addition to the three doctors originally named as defendants, the plaintiffs also added as defendants the medical corporation employing the three doctors, their medical malpractice insurer, St. Paul Fire and Marine Insurance Company, the State of Louisiana and the Louisiana Patient Compensation Fund through the Commissioner of Insurance. Under the terms of the settlement, in consideration of a payment of $100,000 on behalf of Dr. Jones and the medical corporation by the malpractice insurer, the plaintiffs dismissed with prejudice any claims they might have against Dr. Fleming and Dr. Cash. The plaintiffs agreed to accept the $100,000 settlement and assert their claim for $400,000 in additional medical damages against the Louisiana Patient Compensation Fund.
On August 19, 1988, the Commissioner and the Fund were served with the petition in which the settlement agreement was set forth, including the claim against the Fund for additional damages of $400,000. The Fund took no action at that time. On Sep *1376 tember 14, 1988, judgment was entered by the trial court approving the settlement.
On September 15, 1988, the Commissioner and the Fund filed an answer contending that the settlement agreement was not an admission of liability on the part of the health care providers. Therefore, the Fund contended that at trial it should be able to assert that the doctors were not negligent in their care of Mrs. Stuka. The Fund also requested a jury trial.
On October 3, 1988, the plaintiffs filed a motion to strike paragraphs 4, 5, 6 and 9 of the Fund’s answer. Those paragraphs are as follows:
4.
It is submitted that the settlement described above wherein four health care providers are released in consideration of a payment of $100,000.00 does not constitute an admission of liability under the provisions of La.R.S. 40:1299.440(5). Consequently, all issues, including the issues of whether there was a breach of the standard of care, how many, if any, of the health care providers breached the standard of care, and the amount of the damages owed as a result of any proven breach of the standard of care are still at issue and must all be litigated to conclusion.
5.
Respondents have denied and continue to deny that any of the health care providers breached the appropriate standard of care in their treatment of petitioner, Loma Marie Larrieu Stuka.
6.
In the alternative, and only in the event that this court determines that any of the health care providers did in fact breach the appropriate standard of care, the office of the Commissioner of Insurance, the office of the Attorney General of the State of Louisiana, and the Louisiana Patient’s Compensation Fund claim and are entitled to the provisions of the Louisiana Medical Malpractice Act, La.R. S. 40:1299.41, et seq, particularly La.R.S. 40:1299.42B.
9.
Respondents pray for trial by jury on all issues.
The plaintiffs argued that, as to paragraphs 4 and 5, the Fund failed to raise an objection to the settlement within the twenty day time limit required by LSA-R.S. 40:1299.44 C(3) and were therefore precluded from doing so in its answer. The plaintiffs argued that according to the settlement, it was determined that only Dr. Jones was liable for Mrs. Stuka’s damage and that, because the policy limits of $100,-000 had been paid by the medical malpractice insurer, Dr. Jones’ liability was admitted and therefore liability was no longer at issue.
The plaintiffs argued that paragraph 6 was vague. They also contended that the Fund was not entitled to a jury trial as prayed for in paragraph 9.
On October 13, 1988, the trial court entered judgment striking paragraphs 4 and 5, finding the claims alleged therein were asserted too late. Paragraph 6 was also stricken, the court finding that the paragraph was vague and did not set forth any facts.
Paragraph 9 was stricken, the trial court holding that the Fund was not entitled to a jury trial.
The defendants filed an application for supervisory writs in this court. On October 27, 1988, we granted the writ application, made it peremptory and remanded the case to the trial court for further proceedings. We stated that under Williams on Behalf of Williams v. Kushner, 449 So.2d 455 (La.1984), the Fund was entitled to a jury trial. That case held that LSA-R.S. 13:5105, which precludes jury trials in suits against the state and its subdivisions, is not applicable to cases involving the Fund.
We also found that the plaintiffs had settled only with Dr. Jones, the corporation and their insurance carrier, obtaining nothing from the other health care providers named in the suit. We held that because *1377 there was not a settlement for the total policy limits of all health care providers, but only a partial settlement, the issue of liability was still open for litigation at trial and that the Fund could therefore assert the lack of negligence of the health care providers.
The plaintiffs then applied for writs to the Louisiana Supreme Court. On January 13, 1989, that court granted the plaintiffs’ writ application and remanded the case to this court for “briefing, argument and an opinion.”
The parties have briefed the case to this court on the issues of whether the Fund is entitled to a trial by jury and whether liability is an issue which may be litigated by the Fund.
RIGHT TO JURY TRIAL
In the trial court, the plaintiffs originally requested a trial by jury, but withdrew that request when the proposed settlement agreement was presented to the trial judge for consideration. In their answer, filed the day after the settlement was approved, the Fund requested a jury trial on the issues relating to the plaintiffs’ claim for excess damages from the Fund.
The plaintiffs argued in the trial court that the Fund was not entitled to request a trial by jury. The trial court agreed and ordered stricken that portion of the Fund’s answer which requested a jury trial. We find that the trial court erred in denying the Fund’s request for a jury trial. Accordingly, we reverse that portion of the trial court judgment.
LSA-C.C.P. Art. 1733 provides in pertinent part:
A. A party may obtain a trial by jury by filing a pleading demanding a trial by jury and a bond in the amount and within the time set by the court pursuant to Article 1734.
In Williams on Behalf of Williams v. Kushner, 449 So.2d 455 (La.1984), a claimant who had settled with a health care provider for his $100,000 limit of liability sought to obtain $400,000 in excess damages from the Fund. The claimant requested a jury trial for a determination of the excess amount of damages recoverable from the Fund. In that case, the Fund argued the claimant was not entitled to a jury trial because the Fund is a budgetary' unit of the state and jury trials against the state are statutorily prohibited.
The court found the Medical Malpractice Act did not deny a medical malpractice claimant, who had settled with a qualified health care provider or his insurer, the right to trial by jury on the amount of damages recoverable from the Fund. Because a suit under the Medical Malpractice Act is against the health care provider and not against the Fund, an alleged state agency, the prohibition against jury trials involving the state, under LSA-R.S. 13:5105, is not applicable.
The plaintiffs in this case argue that although Williams on Behalf of Williams v. Kushner, supra, grants them the right to request a jury trial in a proceeding to recover from the Fund, the case is not authority for allowing the Fund to request a jury trial. The plaintiffs claim that the Fund is only an intervener and, as such, does not possess the right to request a trial by jury.
Williams on Behalf of Williams v. Kushner, supra, supports the view that the Fund is an intervener. In Felix v. St Paul Fire & Marine Insurance Company, 477 So.2d 676 (La.1985), the court also held that in a malpractice case, the Fund is not a defendant, but is a statutory intervener with a statutory interest in defending the Fund against claimants seeking excess damages. Under the statutory scheme of the Medical Malpractice Act, the Fund is not named as a defendant in a proceeding to obtain excess damages above the $100,-000 liability limit payable by health care providers and their insurers.
In Felix, the court held the Fund is a third person with an interest in the proceedings between the claimant and the health care provider, because any damages in excess of $100,000 per health care provider, will be paid by the Fund.
*1378 The plaintiffs assert that LSA-C.C.P. Art. 1094 bars an intervener from seeking a jury trial. That article provides:
An intervener cannot object to the form of the action, to the venue, or to any defects and informalities personal to the original parties.
We find that under the particular facts presented in this case, LSA-C.C.P. Art. 1094 does not bar the Fund from seeking a jury trial. Long ago the Supreme Court of this state recognized the right of an inter-vener to seek a jury trial. In LaCroix v. Menard, 3 Martin N.S. 339 (La.1825), the court found that although an intervener is neither a plaintiff or a defendant, he either opposes the claims of one or both of the parties litigating and in that light is an actor in the cause.
The court went on to state that:
By whatever appellation he be designated, it appears to us a necessary consequence of admitting him as a party, that he should have the same right in proving his case, and trying it, and in enforcing his judgment, as those who were originally plaintiffs and defendants.
This case was decided long before the enactment of LSA-C.C.P. Art. 1094 which now arguably operates to preclude a regular intervener from seeking a jury trial in any proceeding in which he interjects himself.
However, in this case, the Fund, as a statutory intervener, is in a posture different from that of a general, voluntary inter-vener. A voluntary intervener, rather than proceeding by intervention, may choose to bring a separate suit to enforce any claim he may have, or assert his rights when a separate suit is brought against him. In medical malpractice cases, the Fund is drawn in as an intervener by the plaintiffs, rather than choosing to intellect itself into the suit, in order to defend against claims for excess damages.
Under the act, it is necessary that the Fund be served with a judgment or settlement in favor of a plaintiff in order for the plaintiff to then assert a claim for excess damages (up to $400,000) from the Fund.
It is at that point, on the action of the plaintiff, that the Fund becomes a statutory intervener and has a significant interest in defending against claims for excess damages. It is only at this stage of the proceedings that the Fund, as a statutory intervener, is required to defend against claims for excess damages. Therefore, it seems imperative that if a claimant is to be afforded the right to a jury trial in seeking excess damages from the Fund, then fundamental fairness requires that the Fund, forced into the litigation to respond for excess damages, should also be afforded the right to request a trial by jury in defending against such claims.
We also note that although Williams on Behalf of Williams v. Kushner, supra, held that only the health care provider is a defendant in a medical malpractice suit, in the present case, the insurance commissioner and the Fund were specifically named as defendants in the plaintiffs’ pleadings.
The plaintiffs also contend that the Fund’s request for a jury trial was not timely filed. However, we find that the Fund’s request was timely under LSA-C.C. P. Art. 1733(C) which provides:
C. The pleading demanding a trial by jury shall be filed not later than ten days after either the service of the pleadings directed to any issue triable by a jury, or the granting of a motion to withdraw a demand for a trial by jury.
The plaintiffs withdrew their request for a jury trial on September 14, 1988. On the next day, September 15, 1988, at the earliest possible time under the circumstances, the Fund filed an answer, including a request for a jury trial. The Fund’s request was timely.
Accordingly, the Fund’s request for jury trial shall be maintained.
LIABILITY
When the plaintiffs initially filed their suit for medical malpractice, they alleged malpractice on the part of three health care providers. Plaintiffs claimed that, Dr. Michael Fleming, Dr. Marion Cash and Dr. Ricky Jones, all of whom practiced together, examined and treated Mrs. Stuka *1379 during the time of her sinus infection and resulting brain abscess, and that they each failed to properly diagnosis and treat her condition.
The plaintiffs later filed a supplemental and amending petition, seeking approval of a settlement with the health care providers. In that petition, the plaintiffs added another health care provider. In addition to the doctors originally named, the plaintiffs added the medical corporation which employed the three original defendants. Plaintiffs also added St. Paul Fire & Marine Insurance Company, the medical malpractice insurer of the four health care providers, as well as the State of Louisiana and the Commissioner of Insurance.
In the amended petition, the plaintiffs alleged that the substandard care of Dr. Jones resulted in Mrs. Stuka’s brain abscess. Under the terms of the settlement, St. Paul Fire and Marine Insurance Company paid the plaintiffs $100,000 on behalf of Dr. Jones and the medical corporation. In exchange, the plaintiffs dismissed with prejudice their claims against the other health care providers, Drs. Fleming and Cash, “in further consideration of the foregoing payment” of $100,000. The plaintiffs also released the medical corporation and Dr. Jones from “individual” liability.
Under the Medical Malpractice Act, when the $100,000 liability limitation is paid on behalf of a health care provider, liability of that health care provider is admitted. The plaintiffs argue that because $100,000 has been paid on behalf of the health care providers by the insurer, liability is admitted and the Fund is precluded from litigating that issue at trial. The Fund argues that the $100,000 liability limit per health care provider has not been paid and therefore liability has not been admitted as to any of the health care providers named in the suit.
LSA-R.S. 40:1299.42 B(1) provides that the total amount recoverable for any death or injury to a patient may not exceed $500,-000.
LSA-R.S. 40:1299.42 B(2) and (3) provide that a health care provider is not liable in excess of $100,000 for all claims of malpractice resulting in injury or death to any one person, and that any excess amounts up to $500,000 are to be paid by the Fund.
LSA-R.S. 40:1299.44 C(5), dealing with settlement of malpractice claims, provides that, in approving settlements and determining what amount, if any, is to be paid by the Fund, in those cases where the insurer has paid the policy limit of $100,-000, the court shall consider the liability of the health care provider admitted and established.
However, LSA-R.S. 40:1299.42 D(5) provides that in the event that a partial settlement is executed between plaintiffs and the defendant and/or his insurer for the sum of $100,000 or less, written notice of such settlement shall be sent to the attorney general. Such settlement shall not bar the continuation of the action against the Patient’s Compensation Fund for excess sums. In such situations, where the policy limits have not been paid by the insurer on behalf of each named health care provider, the issue of liability has not been admitted and may be litigated. Simon v. Smith, 470 So.2d 941 (La.App. 3rd Cir.1985), writ denied 476 So.2d 353, 355 (La.1985); Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988).
In the present case, the plaintiffs argue that the $100,000 policy limit was paid on behalf of Dr. Jones alone. Therefore, they argue, his liability is admitted and cannot be litigated by the Fund in the consideration of the issue of excess damages.
Under the facts of this case, St. Paul Fire & Marine Insurance provided insurance coverage in the amount of $100,000 for each of the original defendant health care providers. It appears from the settlement agreement that the insurer of the defendant health care providers made a single, $100,000 payment for the release of all three doctors, i.e., Drs. Fleming, Cash and Jones, as well as the medical corporation, rather than paying the policy limits for each defendant. Therefore, liability on the part of no defendant is admitted.
The pleadings before us reveal that in the settlement agreement, the three doc *1380 tors, the corporation, and the insurer settled the claim against all for $100,000.[2] The effort to structure the settlement so as to make it appear to be a settlement only as to Dr. Jones for the full $100,000 policy limits applicable to him, thus triggering the statute’s admission of liability provision, does not change the reality of the situation.
It is clear from the statute that a settlement with one health care provider for less than the $100,000 policy limits does not trigger the admission of liability which would be binding on the Fund. It follows that a settlement of claims against three health care providers for only a single, $100,000 payment likewise does not trigger the admission of liability provision.
Under the facts of this case, the insurer of the health care providers has not paid the policy limits of $100,000 for any one health care provider as required to constitute an admission of liability under the Medical Malpractice Act. The $100,000 payment has been made to settle the claim against three health care providers, and possibly a fourth, the Medical Corporation. Therefore, the issue of liability may be litigated by the Fund in determining the amount of excess damages to be paid by the Fund.
In addition, the plaintiffs claim that the Fund had only twenty days from the filing of the settlement petition to file its answer or objection to the settlement. They claim that the Fund’s answer, filed September 15, 1988, after the settlement was approved by the court, was not timely, and, therefore, the Fund cannot contest liability. This argument is meritless. We find that the Fund acted timely in filing its answer and in seeking to defend against the plaintiffs’ claim for excess damages.
The plaintiffs claim that they proceeded under the settlement provisions of LSA-R. S. 40:1299.44 C. A petition for approval of the settlement was filed in the trial court and a copy of the petition was timely served on the Insurance Commissioner who represents the Fund. However, the settlement in this case did not include an agreement between the plaintiffs and the Fund as to the amount of excess damages to be paid by the Fund.
LSA-R.S. 40:1299.44 C(5) provides that where there is no agreement as to the amount to be paid by the Fund, the court shall determine the amount of the claimant’s damages, if any, in excess of the amount already paid by the insurer of the health care provider. This determination of the amount to be paid by the Fund comes following a trial, and not as a part of the settlement process between the plaintiff and the health care providers and their insurer.
In this case, because the Fund was not a party to the settlement, the Fund had no duty to act. The Fund had no duty to act until the issue of excess damages was properly before the court, following the approval of the partial settlement between the plaintiff and the defendant health care providers.
Under the facts presented herein, the Fund acted timely and properly in filing its answer.
CONCLUSION
For the above stated reasons, we reaffirm our original decision and opinion. Accordingly, we reverse the trial court judgment denying the Louisiana Patient Compensation Fund the right to a jury trial on the issue of excess damages to be paid by the Fund. We also reverse the trial court judgment denying the Fund the right to litigate the issue of liability of the health care providers.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS, at plaintiffs’ costs.

. The facts set forth in this opinion are drawn from the pleadings, as there has not been a trial on the merits.

. The present case is distinguishable from Kelty v. Brumfield, supra. In Kelty, one health care provider settled for the $100,000 liability limit, thus admitting liability for the injury, although another health care provider settled for less than $100,000. In the present case, four health care providers settled a potential $400,000 claim for $100,000. Therefore, the liability limit was not paid on behalf of any one health care provider and the issue of liability is not admitted.