561 So.2d 1371 (1990)
Wally Eugene STUKA, et ux.
v.
Dr. Michael FLEMING, et al.
No. 89-CC-1391.
Supreme Court of Louisiana.
May 17, 1990.
Rehearing Denied June 28, 1990.
Donald Miller, for applicants.
Caldwell Roberts, Mayer, Smith & Roberts, Shreveport, Ambrose Ramsey, III, Carruth, Cooper & Adams, Baton Rouge, Jerald Perlman, Walker, Tooke, Perlman, Lyons & Clawson, Shreveport, for respondents.
LEMMON[*], Justice.
The issue in this case is whether the Patient's Compensation Fund (the Fund), created by La.Rev.Stat.Ann. 40:1299.44, may contest its liability to a medical malpractice victim who has compromised his claim against one health care provider for $100,000, while voluntarily dismissing others, and is seeking recovery against the Fund of damages in excess of the settlement amount. We conclude that payment of $100,000 to a medical malpractice victim by one qualified health care provider (or the provider's insurer) triggers the admission of the liability provision of La.Rev. Stat.Ann. 40:1299.44 C(5), and the only contested issue remaining thereafter between the victim and the Fund is the amount of the victim's damages in excess of the amount already paid.
Plaintiffs filed this action against Dr. Michael Fleming, Dr. Ricky Jones and Dr.
*1372 Marion Cash, alleging that plaintiff wife had been treated by the three associated doctors between November, 1985 and March, 1986 for sinus problems, that she developed severe nausea, vomiting and headaches, and that she was ultimately diagnosed as having a brain abscess caused by sinus infection.[1] The petition alleged that substandard medical care by the three doctors caused her to undergo surgery and to suffer residual brain damage and susceptibility to seizures.
Plaintiffs and the doctors' malpractice insurer thereafter reached an agreement to settle the claim. Plaintiffs filed an amended petition seeking judicial approval of the settlement agreement pursuant to La.Rev. Stat.Ann. 40:1299.44 C.[2] In the amended petition plaintiffs added as defendants the medical corporation which employed the three doctors, the medical malpractice insurer of the doctors and the corporation, the State of Louisiana, and the Fund. Under the terms of the settlement the insurer agreed to pay $100,000 on behalf of Dr. Jones and the corporation.[3] In return plaintiffs agreed to release Dr. Jones, the medical corporation and the insurer, reserving their rights against Dr. Jones, the medical corporation, the insurer and the Fund to the extent necessary to preserve their claim for damages in excess of $100,000 from the Fund. Plaintiffs further agreed to dismiss with prejudice any claims against Dr. Fleming and Dr. Cash.
After the twenty-day period provided by Section 1299.44 C(3) elapsed without any opposition to the settlement, the trial court rendered judgment approving the settlement. The judgment noted that the trial as to the amount of damages, if any, due by the Fund was to be conducted at a later date.
The Fund then filed an answer, denying negligence on the part of any health care provider and asserting its right to litigate the issue of liability. The Fund contended that the $100,000 settlement which resulted in the dismissal of four health care providers did not constitute an admission of liability under Section 1299.44 C(5).[4] The Fund also requested a jury trial on all issues.
Plaintiff then filed a motion to strike the jury trial request and to strike the Fund's opposition to the court's considering the settlement as an admission of liability.
The trial court rendered judgment on the motion, striking the jury trial and effectively ruling that the settlement constituted an admission of liability as between plaintiffs and the Fund. The court of appeal reversed, declaring the Fund's right to litigate the issue of liability and granting the *1373 Fund's request for a jury trial.[5] 543 So.2d 1374. The intermediate court recognized that plaintiffs had settled, according to the terms of the agreement, only with Dr. Jones, the medical corporation and their insurer, and had received no additional consideration for the voluntary release of Dr. Fleming and Dr. Cash. However, the court characterized the settlement as one of a potential $400,000 claim against four health care providers (three doctors and the medical corporation) for $100,000.[6] Because the insurer had not paid $100,000 on behalf of each named health care provider, the court held that the issue of liability may be litigated by the Fund.
This court granted certiorari. 548 So.2d 313.
The Medical Malpractice Act, enacted by La. Acts 1975, No. 817, provides a scheme for compensation of medical malpractice victims who have been injured by qualified health care providers. Section 1299.42 B(2) limits the liability of a single qualified health care provider to $100,000 for the injury to or death of any one person. Under Section 1299.42 B(3) damages in excess of the total liability of all liable health care providers, up to $500,000, are to be paid by the Fund. Thus, according to the Act, if a suit is tried against two health care providers and a definitive judgment is rendered holding each legally responsible for the victim's damages which are found to exceed $200,000, the liability of each health care provider is $100,000, and the potential liability of the Fund is $300,000, with a total recoverable amount of $500,000.[7] See Kelty v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988), cert. denied, 536 So.2d 1221 (1989).
The present case does not involve the trial of a suit against multiple health care providers, but involves the settlement of a claim against one health care provider in a suit against several. Section 1299.44 C provides the procedure when "a health care provider ... has agreed to settle its liability" and the victim desires to pursue his claim against the Fund for an amount in excess of the settlement. (emphasis supplied). The victim files a petition seeking approval of the settlement and demanding additional damages from the Fund. Section 1299.44 C(1). The Commissioner of Insurance, as administrator of the Fund, must be served with a copy of the petition, Section 1299.44 C(2), and may agree or object to the amount demanded within twenty days. Section 1299.44 C(3). If the parties cannot agree on the amount to be paid by the Fund, the court must conduct a trial to determine the amount of the victim's damages in excess of the amount already paid by the health care provider or his insurer. In approving the settlement or determining the amount to be paid by the Fund, the court considers the liability of the health care provider as admitted if the health care provider or the insurer on his behalf has paid $100,000. Section 1299.44 C(5).
Thus, under the express terms of Section 1299.44 C, the malpractice victim's settlement with one health care provider or his insurer for $100,000 not only triggers the *1374 Fund's liability for excess damages, if any, but also precludes the Fund from contesting that health care provider's liability. The issue in this case is whether the result is different when other health care providers have been joined in the suit and are dismissed along with the release of the health care provider who paid $100,000.
The statute does not make any express provisions for a case in which multiple health care providers have been joined as defendants and only one pays $100,000 in settlement. We interpret the overall statute as dispensing with the litigation of liability between the victim and the Fund after one health care provider has paid $100,000 in settlement.
A suit under the Medical Malpractice Act is against the health care provider only and not against the Fund. The health care provider is the only party defendant contemplated by the Act. Williams v. Kushner, 449 So.2d 455 (La.1984). Indeed, the statute does not require joining the Fund as a defendant, but only requires serving the administrator of the Fund with the petition for approval of the settlement when a health care provider has agreed to settle its liability to the malpractice victim.
The status of the Fund, after a settlement between the malpractice victim and a health care provider for $100,000, is more in the nature of a statutory intervenor than a party defendant. As an intervenor the Fund may put on evidence and unite with the defendant in resisting the victim's demands, and may appeal a judgment, but may not object to the form of the action. Williams v. Kushner, 449 So.2d at 458. Moreover, when a judgment in excess of $100,000 has been rendered in a suit between the malpractice victim and the health care provider, the Fund may appeal the excess judgment against the Fund. Felix v. St. Paul Fire and Marine Insurance Co., 477 So.2d 676 (La.1985).
The Medical Malpractice Act therefore contemplates that the issue of liability is generally to be determined between the malpractice victim and the health care provider, either by settlement or by trial, and that the Fund is primarily concerned with the issue of the amount of damages.[8] Payment by one health care provider of the maximum amount of his liability statutorily establishes that the plaintiff is a victim of that health care provider's malpractice. Once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission. The only issue between the victim and the Fund thereafter is the amount of damages sustained by the victim as a result of the admitted malpractice.
We recognize that this literal interpretation of the statute affords less rights to the Fund when claims against multiple health care providers are settled than when such claims are tried. In the case of a trial the Fund has the opportunity for reduced exposure when more than one health care provider is determined to be liable. But in the case of a settlement with one health care provider for $100,000 the Fund does not have this opportunity in the subsequent litigation with the victim. However, the Legislature chose in cases of settlement simply to declare the admission of liability by the $100,000 payment of one health care provider and did not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers.
We accordingly conclude that, because of the payment of $100,000 by Dr. Jones' insurer in this case, the only issue to be litigated between plaintiffs and the Fund is the quantum of damages.
As to the jury trial issue, we agree with the reasoning of the court of appeal that since Williams v. Kushner, 449 So.2d 455 (La.1984), affords the tort victim the right to a jury trial in post-settlement litigation with the Fund over the amount of damages to be paid by the Fund, then *1375 "fundamental fairness requires that the Fund, forced into the litigation to respond for excess damages, should also be afforded the right to request a trial by jury in defending against such claims". 543 So.2d at 1378. This reasoning is especially applicable here inasmuch as Dr. Jones and the corporation, who are still in the litigation to a limited extent and are now represented by the Fund's attorney, have withdrawn their waiver of a jury trial.
For these reasons the judgment of the court of appeal is reversed insofar as it recognized the Fund's right to litigate the issue of liability. The case is remanded to the district court for further proceedings.
DIXON, J., concurs in the major part of this opinion, but dissents in part disagreeing with the majority's affirming the Court of Appeal's decision that the Fund is entitled to a jury trial.
DENNIS, J., concurs in part, dissents in part and assigns reasons.
DENNIS, Justice, concurring in part, dissenting in part.
I respectfully concur in the major holding that "payment of $100,000 to a medical malpractice victim by one qualified health care provider (or the provider's insurer) triggers the admission of the liability provision of La.Rev.Stat.Ann. 40:1299.44 C(5), and the only contested issue remaining thereafter between the victim and the Fund is the amount of the victim's damages in excess of the amount already paid."
I respectfully dissent from the additional holding that the Patients' Compensation Fund has a right to a jury trial. After a plaintiff compromises with a health care provider, his claim for additional recovery necessarily must be asserted against the Fund. The Fund may be viewed as money held in trust by the state, or one of its departments, or as a separate legal entity. See La.R.S. 40:1299.44 A. If the Fund is considered to have a separate legal existence, however, it should be viewed as an entity of the state. For the Fund has no home, head or governing body except that of a creature or entity of the state. Consequently, a plaintiff's suit against the Fund is either a suit against the state as trustee or against the Fund as an entity of the state and cannot be tried by a jury. La. R.S. 13:5101, 13:5102, 13:5105. This rationale is difficult to reconcile with Felix v. St. Paul Fire & Marine Ins. Co., 477 So.2d 676 (La.1985) and Williams v. Kushner, 449 So.2d 455 (La.1984), but, in light of the true nature of the plaintiff's claim and the Fund's relationship with the state, our failure to modify the basis of our decisions in this context may lead to greater problems.
I respectfully express doubts and reservations as to other statements in the court's opinion. For example, it does not seem to follow that a release of a health care provider always causes the release of another health care provider bound with him vicariously and solidarily. See generally C.C. art. 1803; Sampay v. Morton Salt Co., 395 So.2d 326 (La.1981). Further, I am reluctant to conclude that the Fund may never be made to pay more than $400,000 for injuries contributed to by more than one health care provider-tortfeasor. Whether a single limitation applies to damages caused by plural defendants may depend on such factors as whether the defendants engaged in concerted action, whether the damages are severable, or whether the damages may be apportioned between the tortfeasors. Compare Hilburn v. Johnson, 240 So.2d 767 (La.App. 2d Cir.1970) with Hess v. Sports Publishing Co., 520 So.2d 472 (La.App. 4th Cir.), writ denied, 523 So.2d 1343 (1988); cf. W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Torts § 52 (5th ed. 1984).
NOTES
[*] Retired Chief Justice John A. Dixon, Jr. participated in this case, having been a member and Chief Justice of this court when the case was orally argued and taken under advisement.
[1] The record consists only of the pleadings. No evidence was presented at the hearing which led to the judgment now at issue.
[2] References hereafter to Sections 1299 mean that Section of Title 40.
[3] The amended petition essentially restated the allegations of the original petition, but focused on the allegedly substandard care rendered by Dr. Jones and did not assert any negligence by the other doctors.
[4] Section 1299.44 C(5), pertaining to the procedure when a health care provider has agreed with the victim to settle its liability and the victim is demanding an amount in excess of the settlement from the Fund, provides:

At the hearing the commissioner [the administrator of the Fund], the claimant and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the commissioner, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars, (emphasis added).
[5] The court of appeal initially granted certiorari and issued a peremptory writ reversing the judgment. 532 So.2d 1204. On plaintiffs' application this court remanded the case to the court of appeal for a full opinion. 536 So.2d 1206.
[6] Although there were four health care providers named in the supplemental petition, the only negligence alleged was by the three doctors. The corporation therefore could only be vicariously liable, and the potential claim against the three doctors under the Act was limited to $300,000.
[7] The constitutionality of the $500,000 limitation was challenged in Williams v. Kushner, 549 So.2d 294 (La.1989). This court held that the limitation of the Fund's liability to $400,000 was not unconstitutional, inasmuch as that body had no liability whatsoever beyond the statute which created it. However, because the plaintiff had compromised his claim against the sole health care provider for $100,000 prior to trial, there was no remaining defendant which could be liable for the damages in excess of $500,000. Therefore, this court did not reach the issue of the constitutionality of either the $100,000 or the $500,000 limitiations on recovery.
[8] The Fund may be concerned with the issue of liability when, for example, the only named health care provider settles with the malpractice victim for less than $100,000.