GOTHARD, Judge.
In this medical malpractice suit, the Louisiana Patient’s Compensation Fund Oversight Board (“the Fund”) appeals a judgment awarding the plaintiff the statutory limits of its liability.
Mrs. Wendy Rodriguez was the obstetric patient of Doctors Mario Serrano and James Lashley for her third pregnancy. She was overweight, hypertensive, and suspected of having gestational diabetes. A 12 pound 9 ounce boy was delivered two weeks post term on May 18, 1989 in a prolonged, difficult delivery, during which the child incurred shoulder dystocia. During the first day of life he became cyanotic and had seizures. He was transferred to the neonatal intensive care unit of Baptist Hospital two days later with seizures, fever, and Erb’s palsy, a stretch injury to the brachial plexus, which is a network of nerves in the armpit. He was put on a ventilator, as the Erb’s Palsy had caused paralysis of the diaphragm and respiratory distress. Shortly thereafter, laboratory studies revealed Group B Streptococcus sepsis for which Mrs. Rodriguez had been treated about one month before delivery. The baby died of pneumonia on January 31, 1990, having existed in a virtually vegetative state for all but a few days of his life.
The plaintiffs requested the formation of a medical review panel in February, 1990. The panel found the doctors had performed below the standard of care in failing to test and treat Mrs. Rodriguez for diabetes but found no fault for other alleged acts of negligence. The plaintiffs filed a suit against Doctors Serrano and Landry, their insurer, Louisiana Mutual Insurance Company (LMMG) and West Jefferson Medical Center, Inc., alleging various acts of negligence on the part of the doctors.
Dr. Serrano, who performed the delivery, tendered $100,000 in settlement. On March 20, 1992 the plaintiffs filed a joint petition for court approval of a settlement between themselves and Dr. Serrano, in accordance with the procedure in LSA-R.S. 40:1299.44(0). After a hearing on April 16, 1992, the trial judge approved the settlement. Trial was held before a jury on July 8 and 9, 1992. The jury found in favor of the plaintiffs awarding $600,000 for the parents’ loss of love and affection, mental anguish, and grief and for the baby’s physical pain and suffering.
The trial court signed a judgment on July 22, 1992, adopting the jury verdict but reducing the award to $500,000 plus interest and costs pursuant to LSA-R.S. 40:1299.-42(B)(1), plus $246,263.29 for past medical expenses, all reduced by $100,000 paid in settlement by Dr. Serrano. After a motion for new trial was denied, the Fund perfected a suspensive appeal.
The Fund raises the following issues: 1) whether the joint petition of settlement was filed and acted upon prematurely and contrary to the law, prejudicing the Fund by not according it sufficient time to investigate the law and circumstances of the settlement; 2) whether the court correctly held that liability for injuries not previously pled and considered by the review panel was deemed admitted under the statute; and 3) whether the trial judge so far departed from proper judicial proceedings or so abused its powers as to call for an exercise of this court’s supervisory authority-

Settlement

The appellant complains that the hearing on the joint petition for settlement was set three weeks earlier than the statute allowed.
The Medical Malpractice Act sets out precisely the steps to be taken when a health *337 care provider has agreed to settle its liability and the plaintiff seeks an additional amount from the patient’s compensation fund. LSA-R.S. 40:1299.44(C) provides that a copy of the petition must be served on the Patient’s Compensation Fund Oversight Board and defendants ten days before it is filed in court. Any objections must be filed within twenty days after the petition is filed. ’ The judge must set a hearing as soon “as practicable” after the petition is filed in court and notify the parties.
Counsel for the appellant asserts that he did not receive service of the joint petition until April 7, less than twenty days before the hearing. Counsel’s assertion is erroneous as the copy of the court document, stamped “received by the fund on April 7” and filed with his answer and exception to the settlement petition, clearly is a show cause order for the April 16 hearing, not the petition.
In response, counsel for the plaintiffs states that she served the Fund a copy of the petition by certified mail on February 21, 1992, which was delivered on March 6, more than the required ten days before the petition was filed in court on March 20. There were more than twenty days between the filing and the April 16 settlement approval hearing. Furthermore, appellant made no objection regarding prematurity at the hearing, objecting only to Dr. Lash-ley’s not being required to pay, when he had also been deemed liable. Accordingly, we find that the plaintiffs’ actions regarding the joint petition of settlement were in compliance with the statute and the petition was neither filed nor acted upon prematurely.

Allegations not pled before or considered by Medical Review Panel

The appellant argues that the trial court erred in finding that the health care provider admitted liability for both the shoulder dystocia and Strep B meningitis simply because the doctor entered into the. settlement and tendered his $100,000 statutory limit. The Fund had sought by motion in limine to have evidence regarding causation at trial be ruled admissible; however, the trial judge denied the motion. This court denied the appellant’s writ application in number 92-C-065, as did the Supreme Court in number 92-CC-1967.
In his appellate brief, counsel for the Fund argues that liability for the Strep B infection, which he alleges caused the child’s death, was not pled before the medical review panel, and the physician could not have admitted negligence and liability for the infection. Our review of the law indicates that the Fund had no standing to contest the health care provider’s admission at trial once the settlement had been approved.
The issue of whether or not the Fund may contest liability, where a health care provider has made a settlement for $100,-000, has been considered by the Supreme Court in two recent cases. In Stuka v. Fleming, 561 So.2d 1371, 1374 (La.1990), cert. denied, Louisiana Patient’s Compensation Fund v. Stuka, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990), it was held that such a settlement forecloses the issue of liability as to the Fund:
... Payment by one health care provider of the maximum amount of his liability statutorily establishes that the plaintiff is a victim of that health care provider’s malpractice. Once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission. The only issue between the victim and the Fund thereafter is the amount of damages sustained by the victim as a result of the admitted malpractice.
In Koslowski v. Sanchez, 576 So.2d 470, 473 (La.1991), the court explained, as follows:
The Louisiana Medical Malpractice Act contemplates only one party defendant, the health care provider. Williams v. Kushner, 449 So.2d 455 (La.1984). “The fund is not a negligent party and does not have the status of an Article 2315 defendant.” Williams v. Kushner, 549 So.2d 294, 296 (La.1989). While the patient’s compensation fund is not a party defendant, it is a third party with an interest in the proceedings when dam *338 ages exceed $100,000. Therefore, the fund has the right to intervene in the case of an excess judgment against the fund. Felix v. St. Paul Fire and Marine Ins. Co., 477 So.2d 676 (La.1985).
Liability under the Medical Malpractice Act is based on the initial $100,000 paid by the health care provider or its insurer, pursuant to judgment, settlement or arbitration. When the insurer has admitted liability up to the statutory maximum, the liability of the health care provider is established, and the only remaining issue is the damages, if any, owed by the patient’s compensation fund. The fund cannot contest liability when there is a binding settlement for $100,000 by the health care provider, either before or after trial.
From the foregoing jurisprudence we conclude that in the case before us the Fund was foreclosed from contesting causation or liability, and was entitled only to appeal the amount of damages owed by the Fund. Counsel for the defendant states in his brief that the suit “is an attempt by the plaintiffs to collect an additional $800,000 for an act of malpractice, which has been fully compensated (Shoulder Dystocia.)” We interpret his argument as meaning that the Fund should not have been cast for any damages.
Defendant Dr. Serrano and his insurer did not limit the settlement with the plaintiffs to a single act of negligence; consequently, there is no basis for the Fund’s attempt to deny the plaintiffs an award of damages for their loss of love and affection, for their mental anguish and grief, and for the child’s pain and suffering. The trial transcript graphically reveals the many traumas the child suffered and the extreme stress placed upon the parents when he was hospitalized and when he was cared for at home. The family had to move into Mrs. Rodriguez’s parents’ home for several months, in order for their two daughters to be cared for while Mr. Rodriguez worked and Mrs. Rodriguez stayed with the baby in the hospital. The loss of the child weighed heavily on the family, who had joyfully anticipated the birth of a boy. We find no error in the trial judge’s adoption of the jury awards.
Trial court’s departure from properjudi-cial proceedings, calling for an exercise of the Court of Appeal ⅛ supervisory authority
In the appellant’s final assignment of error, its counsel lists seven' complaints which it alleges were an "abuse of the trial court’s power. Five of the complaints concern the issue of whether the judge should have been recused. During trial, the trial judge discovered that the plaintiffs’ attorney had previously been associated with his brother-in-law’s law firm. He immediately gave the defendant time to move to recuse him. A hearing was held, at which the appointed judge denied the motion to re-cuse. After judgment had been signed, the trial judge voluntarily withdrew. As the correctness of the denial of appellant’s motion to recuse was not raised as an issue for review, we do not address the issue. The other complaints are discussed in our opinion above.
The appellees request sanctions for a frivolous appeal. As they neither answered the appeal nor filed their own appeal, this court cannot entertain their demand. Succession of Bleuler, 600 So.2d 791 (La.App. 5th Cir.1992).
For the reasons assigned above, the judgment appealed from is affirmed.

AFFIRMED.