636 So.2d 957 (1994)
Henry J. OTNOTT, Jr.
v.
Barbara MORGAN, M.D., Chitralekha Subaiya, et al.
No. 93-CA-0684.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1994.
Rehearing Denied June 22, 1994.
*958 Craig J. Cimo, and George M. Papale, Stumpf, Dugas, LeBlanc, Papale & Ripp, Gretna, for plaintiff/appellee.
H. Martin Hunley, Jr., Lemle & Kelleher, Stewart E. Niles, Jr., Bruce J. Toppin, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendants-appellants.
Before SCHOTT, C.J., and WARD and ARMSTRONG, JJ.
SCHOTT, Chief Judge.
This is a medical malpractice claim arising out of surgery performed on plaintiff by defendant, Dr. Mack Cheney, at the Eye, Ear, Nose & Throat Hospital (EENT) in New Orleans. After a bench trial, the trial court rendered judgment in plaintiff's favor for $379,000 against Dr. Cheney, EENT, and Dr. Paul A. Blair, a Tulane University Professor, jointly and solidarily, with a limit of $100,000 on the liability of each defendant and with the Patient's Compensation Fund to pay the excess pursuant to LSA-R.S. 40:1299.42(B)(3)(a). After trial, but before appeal delays ran, EENT paid plaintiff $100,000 and obtained a release in which plaintiff reserved his rights against Drs. Cheney and Blair, their insurers and the Fund. Drs. Cheney and Blair and the Fund have appealed and plaintiff answered the appeal. The principal issue is whether as a matter of law the payment by EENT makes the Fund liable for the entire balance of the judgment whether or not the defendant physicians were guilty of malpractice.
Plaintiff had elective rhinoplasty surgery performed on his nose to correct a deviated septum and hump in his nose. The surgery was performed by Dr. Cheney, a third year Tulane resident. Before the surgery plaintiff's vision was normal. After the surgery, when plaintiff regained consciousness at about 4:00 p.m. he complained to the nurse that his vision was blurred. After performing a visual acuity test which plaintiff passed, the nurse was satisfied that his condition was not unusual. At about 10:00 p.m. after being removed to a private room, plaintiff became aware that he could not see out of his right eye. After an examination, it was determined that plaintiff had suffered total central retinal artery occlusion and was permanently blind in his right eye.
In reasons for judgment, the trial judge stated that this case was a classic one for the application of res ipsa loquitur because plaintiff's blindness occurred while he was under the exclusive control of the defendants. She reasoned that plaintiff suffered injury to a part of his body which was not involved in the surgery while he was under anesthesia and was entitled to recover pursuant to McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973). The court found that EENT was vicariously liable for the negligence of Dr. Cheney who was an employee of EENT and for the negligence of other EENT employees who failed to recognize and promptly treat plaintiff's blindness.
As to Dr. Blair the trial judge had this to say:

*959 The court bases its finding of liability on the part of Dr. Blair under LSA-C.C. art. 2320. As a teacher, Dr. Blair is responsible for the actions of his students. Dr. Blair failed to exculpate himself from a finding of liability.
In their appeal, Drs. Blair and Cheney argue first that the post-trial, pre-appeal settlement by EENT consisting of its payment to plaintiff of $100,000 plus accrued interest, made the Louisiana Patient's Compensation Fund liable for the entire amount in excess of EENT's contribution without regard to the liability of Drs. Blair and Cheney, and the EENT settlement payment precluded the Fund from further litigation except with respect to the quantum of damages. In support of this position, Drs. Blair and Cheney rely upon Stuka v. Fleming, 561 So.2d 1371 (La.1990). In opposition to this position, the Fund relies upon R.S. 40:1299.42(B)(3)(a) and contends that the procedural posture of this case distinguishes it from Stuka and enables it to dispute the arguments of Drs. Blair and Cheney as to their liability for plaintiff's injury.
The cited statute provides as follows:
Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in Paragraph (2) of this Subsection, shall be paid from the patient's compensation fund pursuant to the provisions of R.S. 40:1299.44(C).
The trial court rendered judgment against Drs. Blair and Cheney and EENT for $379,000. The liability of each is limited by R.S. 40:1299.42(B)(2) to $100,000. Thus, under the provisions of the statute quoted above the Fund's liability would appear to be the excess over $300,000. However, the payment by EENT of its $100,000 arguably triggers liability of the Fund for the entire balance of the judgment in the light of Stuka.
In Stuka, the issue as framed by the Supreme Court was whether the Fund could contest its liability to a medical malpractice victim who had compromised his claim against one health care provider for $100,000, voluntarily dismissed others, and sought recovery against the Fund for damages in excess of the settlement amount. The court concluded that payment of $100,000 to a victim by one qualified health provider triggered the admission of liability provision of R.S. 40:1299.44(C)(5). The only contested issue remaining thereafter between the victim and the Fund was the amount of the victim's damages in excess of the amount already paid.
There is a distinction between the Stuka scenario and the present one which may place the Fund in a different position. In Stuka, the victim dismissed his claim against other health providers. Here, the victim has a judgment against two other health providers which is presumed to be valid until and unless reversed on appeal. This would seem to provide the Fund with the right to resist the attempts by Drs. Blair and Cheney to have the judgments against them reversed. However, the following pronouncements from Stuka seem to preclude the Fund's right to oppose the arguments of Drs. Blair and Cheney in this court:
The statute does not make any express provision for a case in which multiple health care providers have been joined as defendants and only one pays $100,000 in settlement. We interpret the overall statute as dispensing with the litigation of liability between the victim and the Fund after one health care provider has paid $100,000 in settlement....
Payment by one health care provider of the maximum amount of his liability statutorily establishes that the plaintiff is a victim of that health care provider's malpractice. Once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission. The only issue between the victim and the Fund thereafter is the amount of damages sustained by the victim as a result of the admitted malpractice....
However, the Legislature chose in cases of settlement simply to declare the admission of liability by the $100,000 payment of one health care provider and did not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers....
*960 In the light of these pronouncements, we have resolved to consider Dr. Blair's arguments seeking to reverse the judgment against him without regard to the arguments offered by the Fund. We would take the same approach to Dr. Cheney's case except for an additional procedural problem which makes untenable and unacceptable any notion of a credit in favor of the Fund for Dr. Cheney's liability under the judgment. Before addressing this issue, we consider the liability of Dr. Blair under the judgment.
In concluding that Dr. Blair was liable to plaintiff under C.C. art. 2320, the trial court simply observed that as a teacher he was responsible for the actions of his students. In considering the words of the article, however, the trial court oversimplified the law of a teacher's vicarious liability for the negligence of his student. C.C. art. 2320, in pertinent part, provides as follows:
* * * * * *
Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
* * * * * *
Thus, Dr. Blair would only be liable for Dr. Cheney's negligence if he might have prevented the act which caused the damage. According to plaintiff's expert, the cause of plaintiff's blindness was central retinal artery occlusion brought about by retrograde flow of epinephrine into the artery by way of the ethmoidal arteries; and this occurred when Dr. Cheney was making injections of the epinephrine around plaintiff's septum and other parts of his nose. The theory is that Dr. Cheney applied excessive pressure on the needle while it was in contact with a branch of the ethmoidal artery causing the flow of the solution back to the central retinal artery.
Dr. Blair was standing at the plaintiff's head observing Dr. Cheney making these injections. He had not scrubbed and was not taking part in the procedure. Dr. Cheney, as a third year resident, had performed this procedure on numerous occasions in the past. Dr. Blair saw him do nothing which was in any way wrong or out of the ordinary. If Dr. Cheney applied excessive pressure as theorized by plaintiff's expert, Dr. Blair would not have seen this and could not have prevented it. There is no evidence in the record that Dr. Blair might have prevented any act which could conceivably have caused plaintiff's damage. Every witness including plaintiff's expert agreed that Dr. Blair met the standard of care applicable to him under these circumstances. Consequently, the trial court erred as a matter of law in holding Dr. Blair to be vicariously liable to plaintiff under C.C. art. 2320 and the judgment against him will be reversed.
Returning to Dr. Cheney, we need not consider the validity of the judgment against him for malpractice because the payment by EENT of its $100,000 to plaintiff had the effect of shifting all of Dr. Cheney's exposure to the Fund. The trial judge found that EENT was vicariously liable to plaintiff for the negligence of its employees, one of whom was Dr. Cheney. In the release documents, plaintiff specifically released and discharged EENT's nurses but he reserved his rights against Drs. Blair and Cheney, their insurers, and the Fund. But the record does not support a finding of negligence on the part of any employee other than Dr. Cheney. There is no evidence of any breach of duty or deviation from the standard of care by the nurses. Consequently, when EENT made its payment of $100,000 it effectively settled Dr. Cheney's liability along with that of other hospital employees because EENT's exposure could not exceed $100,000 for the negligence of all its employees. The statutory scheme for the Patient's Compensation Fund cannot be construed to permit the Fund to be credited not only with the $100,000 paid by the health care provider, but also with another $100,000 paid by an employee of the health provider whose negligence alone caused the health provider to be liable in the first instance. That was surely not the intention of the legislature in adopting R.S. 40:1299.42(B)(3)(a). Consequently, Dr. Cheney's *961 liability under the judgment was settled when EENT made the payment to plaintiff of $100.000 plus interest.
In its appeal, the Fund contends the plaintiff's general damage award of $300,000 is excessive. In his answer to the appeal plaintiff contends the award is inadequate. The Fund argues persuasively that an award of $200,000 would be appropriate and cites a number of cases to support the argument. Plaintiff argues with equal persuasion that an award of $400,000 would be appropriate and he also cites cases to support his argument. The trial judge gave the following reasons for her award:
The loss of vision in one eye was devastating to Mr. Otnott. His work as a police officer as well as his personal and family life were affected. He suffered from anger, depression and humiliation. The Court's general damage award is based on this finding.
Considering the most recently imposed constraints on the appellate review of awards for damage created by the Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), we are unable to conclude that this award is abusive of the trial court's discretion.
Finally, the Fund takes issue with the trial court's award of $75,000 for loss of earning capacity and argues persuasively that the evidence does not establish that he has lost or will lose any income because of his injury. Over the past fourteen years beginning with Folse v. Fakouri, 371 So.2d 1120 (La.1979), the Supreme Court has steadily reduced the importance of hard evidence to support awards for loss of earnings and gravitated over to a nebulous concept of loss of earning capacity. It requires little evidence to trigger the application of "discretion of the trial court", now so vast that there is little room for adjustment on the appellate level. The award in this case does not reach the required level to warrant a reduction by this court.
Accordingly, the judgment in favor of plaintiff and against defendant, Mark L. Cheney, is vacated and set aside and the judgment against defendant, Paul A. Blair, is reversed and set aside. The balance of the judgment exceeding the amount paid by the Eye, Ear, Nose & Throat Hospital is to be paid by the Louisiana Patient's Compensation Fund. In all other respects the judgment is affirmed.
REVERSED IN PART; VACATED IN PART; AFFIRMED.