686 So.2d 1060 (1996)
Flory McCRORY and Leslie McCrory,
v.
JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 2 d/b/a East Jefferson General Hospital.
No. 96-CA-624.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 1996.
*1061 Rene' A. Curry, Jr., New Orleans, for The Louisiana Patients' Compensation Fund Oversight Board.
George P. Hebbler, Jr., New Orleans, Kurt P. Forshag, Metairie, for Plaintiffs/Appellees.
Before GRISBAUM, WICKER and CANNELLA, JJ.
WICKER, Judge.
The issue on this medical malpractice appeal is whether the Louisiana Patient's Compensation Fund may assert the victim's contributory/comparative negligence to reduce the amount of damages it must pay under the Medical Malpractice Act. The trial court rejected the Patient Compensation Fund's attempt to apply comparative fault. We affirm.
Bert McCrory was injured in an automobile accident on May 15, 1992, in which he sustained a closed fracture of the left hip and an abrasion of his forehead. His injuries were not life-threatening and his physician expected him to recover. On the evening of his admission to the hospital, however, he was discovered dead in his hospital bed.
McCrory's widow and daughter, Flora and Leslie McCrory, filed a medical malpractice suit against Jefferson Parish Hospital Service District No. 2 d/b/a East Jefferson General Hospital, asserting Bert's death resulted from an overdose of medication while he was a patient in the hospital ("multi-drug toxicity with drug-drug interaction"). The hospital settled with plaintiffs for $114,020, comprising its $100,000-plus-interest maximum liability under the Medical Malpractice Law. See La. R.S. 40:1299.42(B)(2). Thereafter plaintiffs substituted the Louisiana Patient's Compensation Fund (PCF) as defendant in place of the hospital.
The Medical Malpractice Act limits the total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits, to a maximum of $500,000 plus interest and cost. La. R.S. 40:1299.42(B)(1). A health care provider's maximum individual liability under the Act is $100,000 plus interest. La. R.S. 40:1299.42(B)(2). Any amount due from a judgment or settlement or from a final arbitration award which is in excess of the total liability of all liable health care providers shall be paid from the patient's compensation fund, but the total amounts paid shall not exceed the $500,000 limitation. La. R.S. 40:1299.42(B)(3)(a)-(b).
The matter was set for trial as to the amount of damages due by the PCF. In a supplemental and amended answer the PCF asserted that Bert McCrory's contributory negligence and/or comparative negligence in causing the automobile accident should be considered by the court in limitation or reduction *1062 of the wrongful death damages claimed by his wife and daughter. Plaintiffs filed a motion to strike and/or motion in limine as to the PCF's attempt to assert the defense of contributory/comparative negligence.
The case was submitted to the district court on joint stipulations of fact, which stated in pertinent part:
STIPULATION NO. 21:
Liability for the overdose of medications and the death of Mr. McCrory was admitted by East Jefferson General Hospital and considered as established by virtue of the hereinafter described court approved settlement between plaintiffs and intervenors with East Jefferson General Hospital as well as under the provisions of LSA-R.S. 40:1299.44(C)(5).
STIPULATION NO. 22:
It is stipulated that plaintiffs' decedent, Bert W. McCrory, was 100% negligent or at fault in causing the automobile accident and his automobile accident-related injuries.
STIPULATION NO. 23:
As a result of the negligence of decedent, Bert McCrory, in having caused the automobile accident and accident-related injuries, the PCF, in response to plaintiffs' lawsuit, has answered same, affirmatively pleading the negligence, contributory negligence, and/or comparative negligence of plaintiffs' decedent (Mr. McCrory) under the provisions of LSA-C.C. Arts. 2323 et seq. and C.C. Articles 1803, 1804 and other laws and jurisprudence of the State of Louisiana, in mitigation and/or reduction of the malpractice damages for which plaintiffs seek recovery herein. Plaintiffs deny that the PCF is entitled to any such mitigation or reduction.
* * * * * *
STIPULATION NO. 26:
It is stipulated between the parties that plaintiff's malpractice damages amount to $500,000, plus legal interest and court costs.
* * * * * *
STIPULATION NO. 32:
The parties stipulate, as a matter of fact, that Bert McCrory's death was solely the result of the administration to him of excessive amounts of Demerol and Phenergan by East Jefferson General Hospital personnel while he was a patient at East Jefferson General Hospital ("the hospital's acts"). The parties do not stipulate that Bert McCrory's death and/or plaintiffs' malpractice damages were, as a matter of law, solely caused by the hospital's acts....
On January 31, 1996 the court rendered judgment in favor of plaintiffs in the amount of $500,000, plus legal interest from date of judicial demand, less a credit for amounts paid by the hospital. The judgment granted plaintiffs' motion to strike/motion in limine. It also granted reimbursement to the worker's compensation intervenor for payments of survivors' benefits and medical expenses to plaintiffs and recognized the claim of plaintiffs' former attorney for attorney's fees.
Pursuant to timely motions for new trial by all parties, on March 8, 1996 the trial court rendered an amended judgment which provided for legal interest on the amount awarded against the PCF from October 21, 1992 until paid, reduced by the sum of $100,000 previously paid by the hospital together with legal interest on the reduced sum from October 21, 1992, until paid. The amended judgment granted the plaintiffs' motion to strike and/or motion in limine and ordered the Patient's Compensation Fund to pay all costs incurred by plaintiffs in prosecution of the claim. It also made certain provisions regarding the interventions that are not relevant to this appeal.
On April 19, 1996 the court rendered a second amended judgment which changed the wording of the amended judgment only as to ruling on the motion to strike/motion in limine, stating that "the award to plaintiffs, as set forth hereinabove for malpractice damages shall not be reduced by apportioning or considering the negligence or fault of plaintiffs' decedent, Bert W. McCrory, in causing the automobile accident and his accident-related injuries."
The PCF took a suspensive appeal.
*1063 On appeal the PCF contends the trial court erred in the following respects: (1) disallowing the PCF's attempt to assert the affirmative defenses of contributory and/or comparative negligence in mitigation or reduction of damages; (2) failing to reduce through apportionment the amount of damages for which the PCF is liable to plaintiffs; and (3) failing to apply the doctrine of confusion to partially extinguish the PCF's obligation to plaintiffs.

APPLICABILITY OF VICTIM FAULT
La. R.S. 40:1299.44(C)(5) provides, in pertinent part:
In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars. [Emphasis added.]
Because the Medical Malpractice Act constitutes a special legislative provision in derogation of the general rights available to tort victims it must be strictly construed. Galloway v. Baton Rouge General Hosp., 602 So.2d 1003, 1005 (La.1992). "On the other hand, legislation is a solemn expression of legislative will, therefore interpretation of a law is primarily the search for the legislature's intent." Hutchinson v. Patel, 637 So.2d 415, 420 (La.1994).
Payment of $100,000 to a medical malpractice victim by one qualified health care provider (or the provider's insurer) triggers the admission-of-liability provision of La. R.S. 40:1299.44(C)(5), so that the only contested issue remaining thereafter between the victim and the Patient's Compensation Fund is the amount of the victim's damages in excess of the amount already paid. Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. den., 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525. A suit under the Medical Malpractice Act is against the health care provider only and not against the Fund, because the health care provider is the only party defendant contemplated by the Act. Id. at 1374.
After a settlement between the malpractice victim and a health care provider for $100,000, the status of the Fund is "more in the nature of a statutory intervenor than a party defendant," so that the Fund "may put on evidence and unite with the defendant in resisting the victim's demands, and may appeal a judgment, but may not object to the form of the action." Stuka v. Fleming, supra. When a judgment in excess of $100,000 has been rendered in a suit between the malpractice victim and the health care provider, the Fund may appeal the excess judgment against it. Felix v. St. Paul Fire and Marine Ins. Co., 477 So.2d 676 (La.1985).
The Medical Malpractice Act therefore contemplates that the issue of liability is generally to be determined between the malpractice victim and the health care provider, either by settlement or by trial, and that the Fund is primarily concerned with the issue of the amount of damages. * * * Payment by one health care provider of the maximum amount of his liability statutorily establishes that the plaintiff is a victim of that health care provider's malpractice. Once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission. The only issue between the victim and the Fund thereafter is the amount of damages sustained by the victim as a result of the admitted malpractice.
Stuka v. Fleming, 561 So.2d at 1374. Although this literal interpretation of the statute affords fewer rights to the Fund when claims against multiple health care providers are settled than when such claims are tried, it was the Legislature's choice to make this restriction and it is not for the courts to change. Id.
"The PCF is in the nature of a statutory intervenor, not a true defendant, and may dispute the quantum of damages over $100,000 but not its own liability therefor." Kelty v. Brumfield, 633 So.2d 1210, 1216 (La.1994). "Rather than being either a negligent party or the equivalent of an Article 2315 defendant, the Fund is considered simply a third party with an interest in the proceedings *1064 when the damages exceed $100,000." Thomas v. Insurance Corp., 93-1856 (La.2/28/94), 633 So.2d 136, 139.
In support of the argument that it should be allowed to present evidence of victim fault, the PCF cites La. Civ.Code Arts. 2315 and Art. 2323.[1] Interpreting the principles enunciated in those articles, the supreme court has held that an original tortfeasor may be liable not only for the injuries he causes, but also for the tort victim's additional suffering caused by inappropriate medical treatment by the health care provider who treats the original injuries. Weber v. Charity Hospital of La. at New Orleans, 475 So.2d 1047, 1050 (La.1985). Similarly, where tortious medical treatment aggravates an accidental injury, the malpractice defendants may be liable for the full extent of the injury. Steptoe v. Lallie Kemp Hosp., 93-1359 (La.3/21/94), 634 So.2d 331, 334-335.
Thus, the PCF argues, a plaintiff whose own negligence placed him in a hospital where he suffered negligent medical treatment is at fault for his own injuries or death resulting from the medical malpractice. Because the plaintiff's own negligence is a legal cause of any malpractice damages, the PCF contends further, his status as debtor and creditor are merged, extinguishing by confusion the amount of damages for which the PCF is liable to plaintiffs to the extent of that portion of the damages for which plaintiff's decedent was a contributing legal cause.
Although the PCF's argument is ingenious and apparently plausible, the statutory constraints on the PCF place it outside the principles it cites. The cases interpreting the Medical Malpractice Act state that the position of the fund is sui generis; it is a creature of statute and has only those rights expressly given to it by the legislature. Mumphrey v. Gessner, 581 So.2d 357, 360 (La.App. 4 Cir.1991), writ denied, 587 So.2d 694 (La.1991). "The Fund is a creature of the legislature designed only to satisfy settlements and/or judgments against health care providers in excess of $100,000.00.... It can have no greater status than given it by its creator (the Legislature). Since the Fund is neither a co-obligor with the health care provider, nor its insurer, then it is not a party defendant." Schwarzenburg v. Jackson, 600 So.2d 163, 164-165 (La.App. 5 Cir. 1992).
The PCF argues that it wishes to employ comparative negligence principles not to negate liability in this case, but to reduce damages. That argument has no merit, however, because comparative negligence reduces damages by reducing the proportion of liability attributable to the defendant. Apportionment of fault is first assessed to determine relative liability of the parties. Only then is the apportionment percentage used to reduce damages.
Because the PCF is not a co-obligor with health care providers, it is not a negligent party and does not have the status of a Civil Code Article 2315 tort defendant. Williams v. Kushner, 549 So.2d 294, 296 (La.1989). Thus, it may not assert defenses that would be available to an Article 2315 defendant. "The only issue that can be litigated between a claimant and the PCF is the amount of damages. * * * The term `liability' encompasses negligence and causation of the original harm. Since causation is an element of liability, and liability cannot be litigated by the PCF, causation also cannot be litigated." McDougal v. Blanch, 95 1377 (La.App. 1 Cir. 4/4/96), 672 So.2d 398, 401, writ denied, 96-1129 (La.6/7/96), 674 So.2d 973.
In Castillo v. Montelepre, Inc., 999 F.2d 931, 935 (5th Cir.1993), the court said:
The Fund has two choices: either agree to the amount demanded or litigate the sole issue of the claimant's damages. * * * If it chooses not to pay the demanded *1065 amount, then subparagraph (C)(3) allows the Fund to file written objections "to the amount demanded" and thereby force the litigation of the claimant's damages. * * * In the latter instance, the only issue to be litigated is the quantum of the claimant's damages. * * * Importantly, this inquiry has nothing to do with liability; that issue was conclusively resolved between the provider's insurer and the claimant when the insurer agreed to settle for its $100,000 policy limits. * * * The written objections, therefore, provide the vehicle through which the Fund puts into issue, between itself and the claimant, only the amount of the claimant's damages and not the provider's liability.
Once a health care provider settles with the patient for $100,000, its liability to the patient becomes statutorily established so that the PCF is precluded from contesting the health care provider's liability. Castillo v. Montelepre, 999 F.2d at 939. More importantly, the health care provider's payment of its statutory limits also precludes the PCF from litigating the liability of the health care provider. Id. "Consequently, the [PCF] lacks the authority to apportion fault amongst the defendants and reduce its liability to [the patient] by [the health care provider's] share. The only issue the Fund is permitted to litigate ... is the amount of damages the [patient has] suffered." Id.
In Castillo v. Montelepre, supra, the PCF attempted to assert the right of apportionment as to liability of a codefendant of the qualified health care provider:
[T]he Fund asserts that the right of apportionment only comprehends apportioning damages and not liability. Thus, the Fund argues that if allowed to apportion damages, it would not be litigating liability issues. This argument is completely fatuous. Dr. Gordillo's portion of damages would necessarily be proportionate to his share of fault. * * * And determining his proportionate share of fault would necessarily require determination of both Dr. Oms and Montelepre's fault. * * * Thus, not only would liability issues be litigated, Montelepre's liability would have to be litigated. And the latter proposition is precisely what the statute forbids.
The PCF may not negate the admission of liability by the health care provider. Any attempt to "mitigate" damages by introducing a defense waived by the health care provider's settlement would abrogate the statutorily-imposed admission of liability and, thus, cannot be maintained. Accordingly, the trier of fact is not allowed to consider apportionment of fault in determining the amount of damages payable by the PCF. The trial court therefore did not err in refusing to allow the PCF to assert comparative negligence.
Because we find no merit to this first issue, we need not address the PCF's other assignments of error because they were dependent on a finding in its favor on the first issue.

FRIVOLOUS APPEAL
The plaintiffs-appellees answered the appeal, seeking damages for frivolous appeal.
La.C.C.P. art. 2164 provides for the imposition of damages for frivolous appeals. This provision is penal in nature and must be strictly construed. Damages will not be awarded unless it appears that the appeal was taken solely for the purpose of delay, serious legal questions are not raised, or that the appealing counsel does not seriously believe in the position he advocates. Even when the contentions on appeal are found to lack merit, but raise legitimate issues, damages for frivolous appeals are not allowed.
Kambur v. Kambur, 94-775 (La.App. 5 Cir. 3/1/95), 652 So.2d 99, 104.
In this case, we do not find that the appeal was taken solely for the purpose of delay. The precise point which the PCF sought to establish has not been definitively decided by the Supreme Court. The appeal raised legitimate issues. Accordingly, we deny damages for frivolous appeal.
For the foregoing reasons, the judgment is affirmed. The Louisiana Patient's Compensation Fund is cast for all costs.
AFFIRMED.
NOTES
[1] Art. 2315 states, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Art. 2323 provides, "When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."