713 So.2d 1192 (1998)
Julie BOUDREAUX
v.
Kiat VARNISHUNG, M.D. and New Orleans East Women's Clinic.
No. 97 CA 1761.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
Victor Hastings, Kenner, for Plaintiff/Appellee.
David Woolridge, Jr., Stephanie Laborde, Baton Rouge, for Defendants/Appellants Patient's Compensation Fund and Patient's Compensation Fund Oversight Board.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON,[1] J. Ad Hoc.
CARTER, Judge.
This is an appeal by the Louisiana Patient's Compensation Fund Oversight Board (PCF) from a judgment of the trial court ordering the PCF to execute any and all documents necessary to draw payment on the amount of $125,000.00 under a letter of credit posted with the PCF on behalf of Brown, Evans, Varnishung and Golden, a P.M.C., by United Medical Corporation of New Orleans d/b/a/ United Medical Center of New Orleans.

BACKGROUND AND FACTS
On February 2, 1995, Julie Boudreaux confirmed a default judgment against Kiat Varnishung, M.D. and New Orleans East Women's Clinic in the amount of $350,000.00 due to damages Boudreaux sustained as a result of Dr. Varnishung's malpractice. The judgment provided for legal interest from March 27, 1992. At the time the malpractice was committed and the time Boudreaux filed suit, Dr. Varnishung was not a qualified health care provider under the Medical Malpractice Act.
However, subsequent to Boudreaux's judgment, Dr. Varnishung became a qualified health care provider under the Medical Malpractice Act due to the posting of an irrevocable letter of credit in the amount of $125,000.00 issued by SunBank, National Association (SunBank). The letter of credit was posted by United Medical Corporation of New Orleans d/b/a United Medical Center *1193 of New Orleans on behalf of Brown, Evans, Varnishung and Golden, a PMC. The named beneficiary of the irrevocable standby letter of credit is the "Patient's Compensation Fund Oversight Board." The letter was initially issued on July 6, 1994, and renewed with an expiration date of July 7, 1997.
The irrevocable standby letter of credit provides for payment against presentation of drafts at sight drawn on SunBank accompanied by the following signed statement from the beneficiary:
I HEREBY CERTIFY THAT I AM A DULY AUTHORIZED REPRESENTATIVE OF PATIENT'S COMPENSATION FUND OVERSIGHT BOARD FOR THE PURPOSES OF DRAWING UNDER THIS LETTER OF CREDIT. I FURTHER CERTIFY THAT A JUDGMENT REGARDING MALPRACTICE AGAINST BROWN, EVANS, VARNISHUNG AND GOLDEN, A PMC, HAS BEEN ENTERED WITH THE PATIENT'S COMPENSATION FUND OVERSIGHT BOARD AND THAT THE AMOUNT OF THE ACCOMPANYING DRAFT REPRESENTS A SUM DUE AND PAYABLE TO THE PATIENT'S COMPENSATION FUND OVERSIGHT BOARD.
On January 21, 1997, Boudreaux filed a Petition to Make Judgment Executory and for Garnishment and served Garnishment Interrogatories on the PCF. Boudreaux sought to garnish the letter of credit as a means of collecting on a portion of her judgment. On June 18, 1997, the trial court signed a judgment ordering the PCF to draw payment on the letter of credit in the amount of $125,000.00 in favor of Boudreaux.
The PCF appealed the judgment of the trial court with the following assignments of error:
1. Is a letter of credit posted as proof of the financial responsibility required to qualify a self-insured health care provider for enrollment in the Patient's Compensation Fund subject to garnishment for payment of a judgment on a claim not covered under the Medical Malpractice Act and for which the provider has no PCF coverage?
2. Is the trial court's permitting garnishment of the instant letter of credit in these circumstances contrary to public policy?

DISCUSSION
There is no dispute that Boudreaux's malpractice claim is not governed by the Medical Malpractice Act because at the time Dr. Varnishung committed the malpractice, he was not a qualified health care provider under the Act. The result is Dr. Varnishung's liability is not limited to $100,000.00; nor is the PCF's liability implicated in any manner.
However, in an attempt to collect a portion of her $350,000.00 judgment against Dr. Varnishung, Boudreaux seeks to garnish a letter of credit in the amount of $125,000.00 which is in the possession of the PCF. Dr. Varnishung qualified as a self-insured qualified health care provider by the payment of a surcharge assessed by the PCF on August 29, 1996, and the posting of a $125,000.00 letter of credit on his behalf in accordance with LSA-R.S. 40:1299.42 E.[2]
*1194 A letter of credit is an engagement by a bank or other person made at the request of a customer that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit. LSA-R.S. 10:5-103(1)(a). An issuer is a bank or other person issuing a credit. LSA-R.S. 10:5-103(1)(c). A beneficiary of a credit is a person who is entitled under its terms to draw or demand payment. LSA-R.S. 10:5-103(1)(d). A customer is a buyer or other person who causes an issuer to issue a credit. LSA-R.S. 10:5-103(1)(g). In the present case, the issuer is SunBank, the customer is United Medical Corporation of New Orleans d/b/a United Medical Center of New Orleans, and the beneficiary is the PCF.
An irrevocable letter of credit is where the issuing bank guarantees it will not withdraw the credit or cancel the letter before the expiration date. Black's Law Dictionary (6th edition 1990). Unless otherwise agreed, once an irrevocable letter of credit is established as regards the customer, it can be modified or revoked only with the consent of the customer, and once it is established as regards the beneficiary, it can be modified or revoked only with his consent. LSA-R.S. 10:5-106(2).
The purpose of the letter of credit at issue is to enroll the named physicians as qualified health care providers under the Medical Malpractice Act. The Medical Malpractice Act provides a $500,000.00 statutory limit on general damages recoverable by malpractice victims. When qualified under the Act, the provider is responsible for only the first $100,000.00 of damages, and the PCF is responsible for the amount of any judgment in excess of $100,000.00 up to the statutory cap of $500,000.00, plus future medical care, interest and costs.
The conditions for payment to be made under the letter of credit at issue are that there be a malpractice judgment against one of the named providers for an act of malpractice occurring after the physician became a qualified health care provider under the Medical Malpractice Act. Although Boudreaux does present a judgment regarding malpractice committed by Dr. Varnishung, the doctor was not a qualified health care provider at the time of the malpractice. The letter of credit serves as proof of the named providers' financial responsibility for the term of the credit. To allow payment for an act that occurred prior to the effective term of the credit without the consent of the beneficiary is not a valid modification of the letter of credit and is not in accordance with its terms and conditions.
The PCF argues in brief there is another judgment by Brenda Johns against Dr. David Golden, a member of the medical practice group with Dr. Varnishung. The judgment against Dr. Golden and United Medical Center of New Orleans was obtained on November 7, 1996, for $250,000.00 and involved an act of malpractice committed while Dr. Golden was a qualified health care provider. Johns' judgment has been enjoined from enforcement due to the issue of whether PCF was properly notified of her claim. The PCF also alleges that it is aware of several other claims which have been lodged against providers in the Brown, Evan, Varnishung and Golden practice group. Unfortunately, the Medical Malpractice Act does not insure the present scenario where the funds represented by the letter of credit will be exhausted and are unlikely to be replenished due to the dissolution of the providers' business. This is a matter that merits the earliest attention of the legislative branch of government.
We are very sympathetic with the dilemma of the present plaintiff and it appears inequitable to preclude any recovery by this plaintiff against the letter of creditespecially since the plaintiff's judgment is for malpractice by Dr. Varnishung. However, we can discern no provision in the letter of credit that allows recovery for a malpractice judgment rendered before Dr. Varnishung became a qualified health care provider under the Medical Malpractice Act. Further, to re-write the letter of credit based on equitable *1195 considerations would not only be legally questionable, but could also deprive other possible claimants who are covered under the Medical Malpractice Act of funds due them. We realize that Dr. Varnishung's liability is not limited to $100,000.00 and that he is liable for the entire amount of the judgment. However, this fact is of little or no benefit to this injured plaintiff if Dr. Varnishung is impecunious or the judgment is otherwise uncollectible.

CONCLUSION
Considering the law and the record before us, we reverse the ruling of the trial court of garnishment of the letter of credit in favor of Boudreaux. Garnishment under the circumstances presented in this case does not meet the conditions for payment under the letter of credit and it improperly places the claim of a malpractice victim whose recovery is not governed by the Medical Malpractice Act ahead of the claims of those whose claims are governed by the Medical Malpractice Act. Because we reverse the judgment of the trial court on the basis that the letter of credit is not subject to garnishment under the facts of this case, the issue of whether the garnishment violates public policy is moot. All costs of the appeal are assessed against the plaintiff, Julie Boudreaux.
REVERSED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge ad hoc by special appointment of the Louisiana Supreme Court.
[2] LSA-R.S. 40:1299.42 E provides:

(1) Financial responsibility of a health care provider under this Section may be established only by filing with the board proof that the health care provider is insured by a policy of malpractice liability insurance in the amount of at least one hundred thousand dollars per claim with qualification under this Section taking effect and following the same form as the policy of malpractice liability insurance of the health care provider, or in the event the health care provider is self-insured, proof of financial responsibility by depositing with the board one hundred twenty-five thousand dollars in money or represented by irrevocable letters of credit, federally insured certificates of deposit, bonds, securities, cash values of insurance, or any other security approved by the board. In the event any portion of said amount is seized pursuant to the judicial process, the self-insured health care provider shall have five days to deposit with the board the amounts so seized. The health care provider's failure to timely post said amounts with the board shall terminate his enrollment in the Patient's Compensation Fund.
(2) For the purposes of this Subsection, any group of self-insured health care providers organized to and actually practicing together or otherwise related by ownership, whether as a partnership, professional corporation or otherwise, shall be deemed a single health care provider and shall not be required to post more than one deposit. In the event any portion of the deposit of such a group is seized pursuant to judicial process, such group shall have five days to deposit with the board the amounts so seized. The group's failure to timely post said amounts with the board will terminate its enrollment and the enrollment of its members in the Patient's Compensation Fund.