798 So.2d 1161 (2001)
UNITED MEDICAL CORPORATION OF LOUISIANA, d/b/a United Medical Center of New Orleans
v.
Brenda JOHNS.
No. 2000-CA-1226.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 2001.
*1162 Clarence F. Favret, III, Angela C. Imbornone, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, Counsel for Defendant/Appellant.
Stephanie B. Laborde, Milling Benson Woodward, L.L.P., Baton Rouge, LA, Council for Plaintiff/Appellee.
Court composed of Judges CHARLES R. JONES, PATRICIA RIVET MURRAY and DENNIS R. BAGNERIS, SR.
PATRICIA RIVET MURRAY, Judge.
Plaintiff, Brenda Johns, appeals a judgment and amended judgment rendered in connection with a petition to nullify a default judgment obtained by her in a medical practice action. In a judgment signed on June 21, 1999, the trial court granted the petition of the Louisiana Patient's Compensation Fund Oversight Board ("PCF") to nullify a default judgment entered against Dr. David Golden. On July 29, 1999, the court rendered a judgment, which granted Ms. Johns' motion for new trial and amended the earlier judgment to deny the petition for nullity as to Dr. Golden's liability, but granted it as to the amount of damages that resulted from that liability.

FACTS AND PROCEDURAL HISTORY
On May 20, 1994, Brenda Johns filed a medical malpractice lawsuit against three defendants who were not "qualified" health care providers as defined by Louisiana's Medical Malpractice Act ("the Act"), La. R.S. 40:1299.41, et seq.[1] Ms. Johns also invoked a medical review panel with regard to her allegations that Dr. David Golden and United Medical Corporation of Louisiana, d/b/a United Medical Center of New Orleans ("UMC"), two "qualified" health care providers, had committed malpractice in their treatment of her in March 1993. On May 16, 1995, the panel rendered its opinion that Dr. Golden, but not UMC, had failed to comply with the appropriate standard of care in treating Ms. Johns. On August 14, 1995, Ms. Johns amended her district court action to add Dr. Golden and UMC as defendants in her malpractice lawsuit; both were served.
*1163 On August 1, 1996, the trial court rendered a default judgment against Dr. Golden, UMC, and two of the non-qualified defendants. On November 7, 1996, the court confirmed the default judgment against the defendants and rendered judgment in Ms. Johns's favor against the defendants, in solido, for $250,000.00. Seventy-one days after the default judgment was confirmed, Ms. Johns' attorney served the PCF with the default judgment and made demand for immediate payment under the Act.[2]
On February 27, 1997, UMC filed a petition to nullify the default judgment rendered against it because it had not received notice of either the preliminary default or the confirmed default judgment. The PCF, which, pursuant to the Act, would be responsible for the portion of the judgment exceeding $100,000.00, intervened in this matter.[3]
Trial on the petition for nullity was set for April 21, 1999. Before trial began, the parties stipulated that the default judgment against UMC was null and void, thus disposing of the UMC petition. However, because the stipulation did not affect the default judgment as to Dr. Golden, trial proceeded on the PCF's intervention. After hearing arguments from counsel and testimony from Ms. Johns' attorney, who had obtained the default judgment, the court took the matter under advisement.
On June 21, 1999, the trial court rendered judgment, granting the petition to nullify the default judgment as to quantum only and finding that "the PCF was entitled to notice of the plaintiff's intent to take a default against the qualified health care providers" and "should have been given the opportunity to contest and/or appeal the amount of damages awarded." Ms. Johns filed a motion for new trial, seeking to have the quantum award annulled only to the extent that it exceeded $100,000.00. The trial court granted the motion, and, on July 29, 1999, rendered an amended judgment that nullified the default judgment as to Dr. Golden's liability, but granted it as to the amount of damages caused thereby. This appeal followed.

DISCUSSION
In its reasons for judgment, the trial court noted that the Medical Malpractice Act was silent on the question of whether the PCF, which was not a defendant in the suit filed by Ms. Johns, was entitled to notice before a default judgment was entered against a qualified health care provider. The court, however, found that the PCF was "akin" to a state agency, which, statutorily, was required to satisfy judgments or settlements, in excess of $100,000, involving qualified health care providers. The court concluded, therefore, that Code of Civil Procedure article 1704, which provides that the state, as well as its agencies or instrumentalities, is entitled to notice of the intent to enter a default judgment for which it would be liable, is applicable to the PCF. The court stated that the PCF was entitled to notice of the proceedings at a point where it would have had an opportunity to exercise its limited right to appeal quantum. Although the Act is silent as to when a plaintiff must *1164 submit a confirmed default judgment to the PCF, the court reasoned that it would be inappropriate to withhold notice until the appeal delays had run, thereby depriving the PCF of its right to contest the amount of damages suffered as result of a qualified provider's malpractice. The trial court explained that its ruling was consistent with the provisions of the Act regarding settlements, which afford the PCF an opportunity to object to the settlement and to present evidence to support its position that a settlement should not be approved. Because the PCF had not received such notice, the court granted the PCF's petition to nullify the default judgment against Dr. Golden.
We find the trial court's reasoning to be compelling. As the court noted, there is no provision in the Act for the situation presented herein. Nor are there any cases addressing this issue; our research located only one reported case that involved the PCF and a default judgment obtained against a health care provider. See Boudreaux v. Varnishung, 97-1761 (La.App. 1 Cir. 6/29/98), 713 So.2d 1192. That case, however, did not involve a claim against the PCF for an excess judgment.[4]
As the Fifth Circuit explained in McCrory v. Jefferson Parish Hospital Service District No. 2, 96-624 (La.App. 5 Cir. 12/30/96), 686 So.2d 1060, the issue of liability in a medical malpractice claim generally is to be determined between the malpractice victim and the health care provider either by settlement or by trial. The Fund primarily is concerned with the issue of damages. "Once payment by one health care provider has triggered the statutory admission of liability, the Fund cannot contest that admission. The only issue between the victim and the Fund thereafter is the amount of damages sustained by the victim as a result of the admitted malpractice. Stuka v. Fleming, 561 So.2d [1371,] 1374 [(La.1990)]." 686 So.2d at 1063.
Ms. Johns contends that the trial court erred, as a matter of law, when it concluded that the PCF is "akin" to a state agency to which the notice provisions of La.Code Civ.P. art. 1704 are applicable.
La.Code Civ.P. art. 1704 provides in part:
A. Notwithstanding any other provision of law to the contrary, prior to confirmation of a judgment of default against the state or any of its departments, offices, boards, commissions, agencies, or instrumentalities, a certified copy of the minute entry constituting the judgment entered pursuant to Article 1701, together with a certified copy of the petition or other demand, shall be sent by the plaintiff or his counsel to the attorney general by registered or certified mail, or shall be served by the sheriff personally upon the attorney general or the first assistant attorney general at the office of the attorney general. If the minute entry and the petition are served on the attorney general by mail, the person mailing such items shall execute and file in the record an affidavit stating that these items have been enclosed in an envelope properly addressed to the attorney general with sufficient postage affixed, and stating *1165 the date on which such envelope was deposited in the United States mails. In addition the return receipt shall be attached to the affidavit which was filed in the record.
B. If no answer is filed during the fifteen days immediately following the date on which the attorney general or the first assistant attorney general received notice of the default as provided in Subsection A of this Section, a judgment by default entered against the state or any of its departments, offices, boards, commissions, agencies, or instrumentalities may be confirmed by proof as required by Article 1702.
This case is not the first time that a Louisiana court has grappled with the unique status of the PCF. In Remet v. Martin, 98-2751 (La.App. 4 Cir. 3/31/99), 737 So.2d 124, this court, reviewing the juridsprudence, summarized the position of the PCF as follows:
According to the jurisprudence interpreting the Medical Malpractice Act, the position of the Fund is sui generis; it is a creature of statute and has only those rights expressly given to it by the legislature. Mumphrey v. Gessner, 587 So.2d 694 (La.1991). The standing of the Fund in a medical malpractice case has been discussed by this court in Kelty v. Brumfield, 534 So.2d 1331, 1333 (La. App. 4th Cir.1988), writ den., 536 So.2d 1221 and 536 So.2d 1222 (La.1989):
The Medical Malpractice Act does not contemplate the Fund as a party defendant. Williams v. Kushner, 449 So.2d 455 (La.1984). The Fund is a "budget unit" of the State. La.R.S. 40:1299.44(A)(5)(g). The functions of administering the Fund are carried out by the commissioner of insurance. La.R.S. 40:1299.44(A)(5)(b). The act does not give the Fund status as a co-obligor or insurer of the health care provider. It is a creature of the legislature designed to satisfy settlements and/or judgments against health care providers in excess of $100,000.
737 So.2d at 127-28.
The Louisiana Supreme Court has identified the following factors to be considered in determining whether an entity is to be classified as a state or public agency: 1) it was created by the Legislature; 2) its powers were defined specifically by the Legislature; (3) its property belongs to the public; and 4) its functions were exclusively of a public character and performed solely for the public benefit. State v. Smith, 357 So.2d 505 (La.1978). Applying these factors to the PCF militate in favor of the conclusion, reached by the trial court, that it, indeed, is "akin" to a state agency.
The question of whether the East Baton Rouge Housing Authority was a state agency or instrumentality was addressed by the First Circuit in the context of a claim against the authority by the State Civil Service Commission. In determining that the employees of the housing authority were employees of a state agency or instrumentality, the court noted that the generally accepted definition of an instrumentality is "that of an extension of a larger body, or an agency thereof, a means to an end." Department of State Civil Service v. Housing Authority of East Baton Rouge, 95-1959 (La.App. 1 Cir.5/10/96), 673 So.2d 726.
We conclude, therefore, that the PCF, a "budget unit" of the state, created by the legislature for the specific and limited purpose of satisfying excess judgments against health care providers qualified under the Medical Malpractice Act, is an instrumentality of the state. As such, the trial court correctly found that art. 1704 was applicable to it.
*1166 This holding comports not only with the unique status of the PCF but also with the guiding principles of statutory construction, as described by the McCrory court:
Because the Medical Malpractice Act constitutes a special legislative provision in derogation of the general rights available to tort victims it must be strictly construed. Galloway v. Baton Rouge General Hosp., 602 So.2d 1003, 1005 (La. 1992). "On the other hand, legislation is a solemn expression of legislative will, therefore interpretation of a law is primarily the search for the legislature's intent." Hutchinson v. Patel, 637 So.2d 415, 420 (La.1994).
686 So.2d at 1063.
The Act contemplates the PCF's involvement in the settlement of a medical malpractice claim, specifically requiring notice to the PCF, allowing participation by the PCF, and permitting it to appeal quantum. La.R.S. 40:1299.44(C). There is no question that the legislature intended to include the PCF in malpractice actions at the point at which it will become responsible for funding a judgment or settlement. We can discern no rational basis to ignore this legislative intent when the responsibility of the PCF results from a default judgment entered against a qualified health care provider. See LeBlanc v. Barry, 2000-709 (La.App. 3 Cir. 8/30/00), 771 So.2d 696, writ denied, Louisiana Safety Ass'n of Timbermen v. Reliance Ins. Co., 2000-2640 (La.11/17/00), 774 So.2d 978 (court maintained an untimely appeal by PCF of judgment following trial in which PCF was not a party where plaintiffs counsel first notified PCF approximately seventy days after it received notice of the judgment.)
This disposition moots Ms. Johns' contention that the PCF failed to prove that her attorney's failure to notify it of the confirmed default judgment until after the appeal delays had run was "fraud or ill practices" sufficient to nullify the judgment pursuant to La.Code Civ.P. art.2004.
Finally, Ms. Johns complains that the amended judgment should be reversed because it allows the PCF to contest the total amount of damages awarded to her rather than the amount in excess of $100,000.00.
Ms. Johns sought a new trial on the grounds that the judgment rendered on June 21, 1999, "nullified the default judgment on quantum for the first $100,000.00, due only by Dr. Golden, rather than limiting the nullification to that portion of the quantum which represents an `excess damage award' for which the PCF would be liable." The trial court granted that motion and issued an amended judgment that denied the petition to nullify the judgment "to the extent that the judgment relates to the liability of Dr. Golden." (emphasis added). The amended judgment granted the petition to nullify the default judgment to the extent that it related to quantum. In doing so, the court explained that:
... the quantum award against Dr. Golden is a final judgment against him; however, the PCF may contest the amount of damages sustained by the plaintiff in full. In that end, only in the event that it is found that the damages suffered by the plaintiff exceeded $100,000.00 will the PCF be required to pay, with a cap of $500,000.00 as prescribed by law.[5]
A plaintiff's burden, once the qualified health care provider has paid or, as here, has become obligated to pay *1167 $100,000.00, is to prove that the admitted malpractice caused damages in excess of $100,000.00 at a trial against the Fund. Graham v. Willis-Knighton Medical Center, 97-0188 p. 15 (La.9/9/97), 699 So.2d 365, 372.[6] See also Judalet v. Kusalavage, 00-59 p. 6 (La.App. 3 Cir. 6/21/00), 762 So.2d 1128, 1132, writ denied, 2000-2240 (La.10/27/00), 772 So.2d 653, in which the court stated, "the [plaintiffs] are merely responsible for proving that the damages exceeded the statutory limit of $100,000.00...."
Ms. Johns and the PCF agree that liability has been established in this case and that once the default judgment was declared null as to quantum, she became obligated to prove that her damages exceed $100,000.00. The trial court recognized that the Fund will be required to pay any judgment in favor of Ms. Johns only to the extent that she is able to show that her damages exceeded $100,000.
In order to satisfy this burden, Ms. Johns will offer proof of all of her damages. In defending Ms. Johns' claim against it, the PCF will attack that proof in order to convince the fact finder that the damages suffered by her as a result of Dr. Golden's malpractice are less than $100,000. The language of the amended judgment that concerns Ms. Johns simply recognizes this reality; it places no additional burden on her, and is consistent with the jurisprudence.

CONCLUSION
The judgment of June 21, 1999, as amended by the judgment of June 29, 1999, is affirmed.
JUDGMENT AFFIRMED; AMENDED JUDGMENT AFFIRMED.
NOTES
[1] The original defendants were Crescent City Women's Clinic, Inc., West Bank Women's Clinic, Inc., and Gecis Medical Center Corp. These entities had not qualified to participate in the PCF established by the Act either because they had not obtained a medical malpractice insurance policy in certain minimum amounts or they had not placed a $125,000.00 deposit with the PCF as required by the Act. See La.R.S. 40:1299.42.
[2] Ms. Johns also sought a writ of mandamus, directing the PCF to pay the judgment, from the Nineteenth Judicial District Court. Her application was denied.
[3] Under the Act, a qualified health care provider's liability is limited to $100,000.00 for each malpractice claimant's claim. La.R.S. 40:1299.42(B)(2). Damages exceeding $100,000.00, but not exceeding $500,000.00, are paid by the PCF. La.R.S. 40:1299.42(B)(3). Thus, the total recovery for a malpractice claimant is limited to $500,000.00 in general damages under the Act.
[4] Boudreaux involved a default judgment against a health care provider who was not qualified under the Act at the time of the malpractice, but who subsequently became qualified by posting an irrevocable letter of credit in the amount of $125,000 with the PCF as beneficiary. In an attempt to collect a portion of the default judgment against the health care provider, the plaintiff sought to garnish the letter of credit in the possession of the PCF.
[5] We note that if the trial court's amended judgment changed the substance of its original judgment instead of just altering the phraseology of the original judgment, then the issuance of an amended judgment was not proper pursuant to La.Code Civ.P. art.1951.
[6] Although not an issue in this appeal, the Graham court's use of the word "caused" has led to discontent in subsequent jurisprudence regarding a plaintiff's burden of proof as to liability mainly for "secondary damages." See Evans v. Nogues, 98-1827 (La.App. 4 Cir. 1/27/99), 726 So.2d 1115, writ denied, 99-0579 (La.4/23/99), 742 So.2d 884.