MICHAEL E. KIRBY, Judge.
17This appeal arises from a successful medical malpractice suit filed by the plaintiff, Mrs. Sallie Stratmann, against the defendants, Lois Mailander, M.D., Kevin White, M.D., and their employer, Cardiovascular Specialists, Inc. (“CSI”). The Louisiana Patient’s Compensation Fund (“PCF”), the statutory intervenor, appeals a trial court judgment rendered against it for “excess” damages pursuant to the Lou *246 isiana Medical Malpractice Act (“MMA”) [1], and the subsequent trial court order that cancelled the judgment against the defendants upon their payment of $100,000.00 in partial satisfaction of the judgment. Because we find the trial court committed legal error by limiting the defendant health care providers’ total liability to $100,000.00, precluding the jury from allocating fault, we review the record de novo to address comparative fault. After a de novo review, we conclude the end result is the same and, therefore, affirm the trial court judgment against the PCF.
FACTS AND PROCEDURAL HISTORY
In the petition, the plaintiff alleges that Dr. White, her treating cardiologist, recommended that she undergo a transeso-phageal echocardiogram[2] (“TEE”) by Dr. Mailander, to ascertain whether she had a blood clot in the left ventricle of her heart. On August 14, 2000, Dr. Mailander began the procedure and attempted several times, without success, to pass the endoscope down the plaintiffs esophagus. Dr. Melvin Gold, who was called in to complete the procedure, passed |athe endoscope on his first try without incident. The plaintiff was discharged that same day. The following day, the plaintiff called Dr. White’s office, complaining of rib cage and back pain, and was told by the staff personnel to take Tylenol. On August 17, 2000, the plaintiffs brother, Mr. Hubert Berryman, called Dr. White’s office to report that his sister was in great pain and unable to speak. Mr. Berryman was told to come to Dr. White’s office to pick up samples of Vioxx, an anti-inflammatory drug, for his sister. In addition to prescribing Vioxx, Dr. White gave instructions for the plaintiff to go to the emergency room if her symptoms did not improve, or if they worsened. The plaintiff took the medication but had no relief. The next day, after experiencing respiratory distress, the plaintiff was rushed to the hospital emergency room, where x-rays disclosed the perforated esophagus. She underwent emergency surgery to repair the esophagus and remained hospitalized for ten weeks.
The case was tried before a jury. Prior to closing arguments, the trial court ruled that in the event the jury found multiple defendants liable, their total liability would be limited to $100,000.00 under the MMA. Consequently, the jury was precluded from allocating fault among the defendants, and Juiy Interrogatory # 6 read as follows:
What percentage of fault, if any, do you attribute to the following: The total must equal 100%
Defendants %
Sallie Stratmann %
Total %
laAfter deliberating, the jury reached a verdict, finding Dr. Mailander, Dr. White, and the non-physician staff of CSI each breached the applicable standard of care and their negligence caused and/or contributed to the plaintiffs injuries. The *247 jury found no negligence on the part of the plaintiff. Regarding damages, the jury found that $750,000.00 in general damages and $176,710.40 in past medical expenses would adequately compensate the plaintiff.
In accord with the MMA, the trial court reduced the damages to the statutory maximum ($500,000.00) and cast the defendants, collectively, in judgment for $100,000.00 and the PCF for $400,000.00 in addition to the past medical expenses, legal interest and costs. After the defendants remitted $100,000.00 in partial satisfaction of the judgment, the trial court cancelled the judgment against them, reserving the plaintiffs right to proceed against the PCF.
ASSIGNMENTS OF ERROR
On appeal, the PCF argues that the trial court erred by limiting the defendant health care providers’ total liability to $100,000.00 and precluding the jury from allocating fault among them.
The PCF contends that because each negligent defendant is a qualified health care provider under La. R.S. 40:1299.42(A), pursuant to La. Civ.Code art. 2328[3] each is liable for a share of the total damages ($926,710.40) based on their ^respective percentage of fault up to $100,000.00, effectively reducing the excess the PCF must pay. In view of the trial court’s legal errors, the PCF contends a de novo review is necessary.
The defendants, on the other hand, argue that their partial satisfaction of the judgment made it final and non-appealable. Additionally, the defendants argue that the PCF is entitled to a single credit of $100,000.00 because they are employed by the same entity, citing Brown v. Southern Baptist Hospital, 96-1990 (La.App. 4 Cir. 3/11/98), 715 So.2d 423, 438, and Otnott v. Morgan, 93-0684 (La.App. 4 Cir. 3/15/94), 636 So.2d 957, 960. Although the plaintiff agrees with the defendants’ arguments, she contends that if the Court reviews the record de novo to address comparative fault, then it should assign the majority of fault to Dr. Mailander.
LAW AND DISCUSSION
At the outset, we consider whether the PCF can appeal the trial court judgment given the defendants’ $100,000.00 payment in partial satisfaction of the judgment.
The MMA contemplates that liability in a medical malpractice case is generally an issue to be determined between the claimant and the health care provider, either by settlement or by trial, while the PCF has an interest in the issue of excess damages. See Hanks v. Seale, 2004-1485, pp. 9-10 (La. 6/17/05), 904 .So.2d 662, 668. *248 Once a judgment in excess of $100,000.00 is rendered following a trial on the merits, the PCF has an interest for the purpose of appealing the excess judgment against it and may intervene to appeal that issue. Id. at 12, 904 So.2d at 669, citing La. C.C.P. arts. 1091 and 2086. See also Felix v. St. Paul Fire & Marine Ins. Co., 477 So.2d 676, 681 (La.1985).
In this case, the PCF has appealed the amount of the excess damages it is obligated to pay, given the trial court’s judgment that limited the defendant health care providers’ total liability to $100,000.00. Thus, the PCF may appeal the judgment against it even though the defendants have paid $100,000.00 in partial satisfaction of the judgment.
Now we consider whether the trial court legally erred when it limited the defendant health care providers’ total liability to $100,000.00, precluding the jury from allocating fault among them.
La. R.S. 40:1299.42(B) provides, in pertinent part:
(1)The total amount recoverable for all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43, shall not exceed five hundred thousand dollars plus interest and cost.
(2) A health care provider qualified under this Part is not liable for an amount in excess of one hundred dollars [$100,000.00] plus interest thereon ... for all malpractice claims because of injuries to or death of any one patient....
(3) (a) Any amount due from a judgment or settlement or from a final award in an arbitration proceeding which is in excess of the total liability of all liable health care providers, as provided in paragraph (2) of this Subsection, shall be paid from the patient’s compensation fund pursuant to the provisions of R.S. 40:1299.44(0).
lfi(b) The total amounts paid in accordance with Paragraphs (2) and
(3) of this subsection shall not exceed the limitation as provided in Paragraph (1) of this Subsection.
The Louisiana Supreme Court explained the MMA in Stuka v. Fleming, 561 So.2d 1371, 1373 (La.1990), stating:
The Medical Malpractice Act, enacted by La. Acts 1975, No. 817, provides a scheme for compensation of medical malpractice victims who have been injured by qualified health care providers. Section 1299.42 B(2) limits the liability of a single qualified health care provider to $100,000 for the injury to or death of any one person. Under Section 1299.42 B(3) damages in excess of the total liability of all liable health care providers, up to $500,000, are to be paid by the Fund. Thus, according to the Act, if a suit is tried against two health care providers and a definitive judgment is rendered holding each legally responsible for the victim’s damages which are found to exceed $200,000, the liability of each health care provider is $100,000, and the potential liability of the Fund is $300,000, with a total recoverable amount of $500,000. (FN7). See Kelly v. Brumfield, 534 So.2d 1331 (La.App. 4th Cir.1988), cert. denied, 536 So.2d 1221 ( [La.]1989).
In Thoulion v. Jeanfreau, 2000-1045, p. 1 (La.App. 4 Cir. 6/20/01), 794 So.2d 936, two internal medicine physicians, who were found negligent in their treatment of a patient who died of a heart attack, argued on appeal that their total liability was limited to $100,000.00, because they were professional partners who “‘practiced to *249 gether and provided care and treatment to [the patient] as a team, working from the same office and same practice.’ ” Id. at p. 20, 794 So.2d at 948. This Court disagreed and held each physician liable to a limit of $100,000.00, because each was a qualified health care provider under the MMA. Citing Stuka, supra, the Court pointed out that La. R.S. 40:1299.42(B) does not make the PCF responsible for all amounts in excess of $100,000.00, nor does it restrict the pliability of all responsible health care providers in a single medical malpractice action to a $100,000.00 limit of liability. Id. at p. 21, 794 So.2d at 948.
According to the record in this case, the trial court ruled that the defendants’ liability would be limited to “one $100,000.00 cap” because the claim involved only “one patient, one injury.” Again, La. R.S. 40:1299.42(B) limits the liability of a single (not more than one) qualified healthcare provider to $100,000.00 for the injury to or death of any one patient. Because the trial court had undisputed proof[4] that all three defendants were, in fact, qualified health care providers under the MMA at the time of the alleged malpractice, it legally erred by limiting the defendants’ total liability to $100,000.00 before the jury deliberated.
The three defendants rely on the decisions in Brown, supra, and Otnott, supra, to support their argument that the PCF is entitled to a single $100,000.00 credit because they are employed by the same entity. Those cases are distinguishable. Unlike this case, where each negligent defendant is qualified under the MMA by a separate Certificate of Enrollment with the PCF, the negligent defendants in Brown and Otnott were not all qualified under the MMA by separate Certificates of Enrollment.
Moreover, La. Civ.Code art. 2828, the general rule of comparative fault, requires the trial court to calculate damages in such a manner that each tortfeasor pays only for that portion of the damage he has caused. See La. Civ.Code art. 2323; Miller v. LAMMICO, 2007-1352, p. 9 (La.1/16/08), 973 So.2d 693, 700. In a case of medical malpractice, comparative fault is |saIlocated prior to imposition of the MMA damages cap, regardless of whether the plaintiff is comparatively at fault. Miller, 2007-1352 at p. 27, 973 So.2d at 711. Here, the trial court erred, as a matter of law, by precluding the jury from allocating fault among the negligent defendants. Therefore, our de novo review of the record to address comparative fault follows.
In Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court set forth various factors to consider in assigning degrees of fault, including:
(1) [W]hether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in de *250 termining the relative fault of the parties.
Watson, 469 So.2d at 974.
At trial, the plaintiff argued that Dr. Mailander breached the applicable standard of care by perforating her esophagus with the endoscope and failing to inform her after the procedure of the complication and the possible consequences. As to Dr. White, the plaintiff argued that he breached the applicable standard of care by not informing her of the risks associated with a TEE and that alternative therapeutic treatments were available. She further argued that Dr. White failed to respond to her complaints following the TEE and failed to establish office procedures for CSI’s non-physician staff to follow when receiving complaints from patients. Regarding CSI’s non-physician staff, the plaintiff argued that they | flbreached the applicable standard of care by not adequately recording and notifying Dr. White of her complaints.
As previously mentioned, the jury found all three defendants had breached the applicable standard of care. Nonetheless, after reviewing the evidence in the record, we conclude that Dr. Mailander, alone, was at fault in causing the plaintiffs damages by perforating her esophagus during the TEE.
At trial, Dr. Mailander and the defense expert witness both acknowledged that a perforated esophagus is known risk associated with a TEE and, although rare, can occur even in a case without a difficult endoscope pass. Dr. Mailander described a perforated esophagus as a “dreadful complication” with extreme consequences, including death. Yet nothing in the record indicates that, after the plaintiff recovered from the sedation, Dr. Mailander ever informed her that she was unable to pass the endoscope and/or possibly perforated the esophagus.[5] By not alerting the plaintiff to that possibility and its likely consequences, the plaintiff had no reason to suspect that her life was in jeopardy. Additionally, Dr. Mailander failed to adequately instruct the plaintiff prior to her discharge to report to the hospital emergency room if she experienced respiratory problems or abnormal pain in the chest, back, throat or neck areas.
Although the actions of Dr. White and the non-physician staff of CSI fell below the applicable standard of care by failing to adequately respond to the plaintiffs initial complaints in the days after the procedure, we conclude their negligence can be attributed to Dr. Mailander’s failure to notify Dr. White that she linmight have perforated the plaintiffs esophagus. Dr. Mailander admitted that she told Dr. White that she could not pass the endoscope and called in Dr. Gold to complete the procedure, but never mentioned the possibility of a perforated esophagus. Dr. Mailander’s apparent disregard to the possibility of an esophageal perforation, knowing she could not pass the scope, adversely affected the manner in which Dr. White and the CSI non-physician staff responded to the plaintiffs initial post-procedure complaints.
Because we have concluded that Dr. Mailander is 100% at fault in causing the plaintiffs damages, and her total liability is limited to $100,000.00 pursuant to La. *251 R.S. 40:1299.42(B)(2), the PCF is still obligated for excess damages in the amount of $400,000.00 plus medical expenses in the amount of $176, 710.40, together with legal interest and costs pursuant to La. R.S. 40:1299.42, et seq.
DECREE
Accordingly, the trial court judgment rendered against the PCF and the PCF Oversight Board is affirmed.
AFFIRMED

. La. R.S. 40:1299.42, etseq.

. A TEE is a cardiac imaging procedure in which an ultrasound transducer, positioned on an endoscope (a long, thin, flexible instrument about one-half inch in diameter), is guided down the patient’s throat into the esophagus. The esophagus sits behind the heart, allowing a much clearer image of the heart, particularly, the back structures, such as the left atrium. By rotating the tip of the transducer, the physician can examine the heart from several different angles. A TEE is extremely useful in detecting blood clots, masses and tumors that are located in the heart. It can also gauge the severity of certain valve problems, including infections and congenital diseases.

. La. Civ.Code art. 2323 provides, in part:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person’s insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

. Defense Exhibit 2 included the PCF’s Certificates of Enrollment for Dr. Mailander, Dr. White, and CSI.

. Dr. Mailander testified that she usually informed her patients, after completing a TEE, of the possibility of a perforated esophagus. She recalled that, in the plaintiff’s case, she had informed her of that possibility while the plaintiff was in recovery. However, Dr. Mai-lander admitted that plaintiff was still, possibly, sedated. The plaintiff denied receiving any information from Dr. Mailander after the procedure. Although the hospital gave the plaintiff written instructions upon discharge, Dr. Mailander admitted that she did not.